OPINION
{¶ 1} Defendant-appellant, Jonathon D. Monroe ("appellant"), appeals from a judgment of the Franklin County Court of Common Pleas denying his petition for post-conviction relief.
 {¶ 2} Appellant was indicted on April 11, 2001, on eight counts of aggravated murder arising out of the deaths of Deccarla Quincy and Travinna Simmons. The indictment contained for each victim one count of aggravated murder based on prior calculation and design, one based on commission of the crime during an aggravated burglary or burglary, one based on commission of the crime during aggravated robbery or robbery, and one based on commission of the crime during a kidnapping. Each aggravated murder count contained four capital punishment specifications, three based on the felony murder specifications, and one alleging that appellant committed the aggravated murders as part of a course of conduct involving the purposeful killing or attempted killing of two or more persons. The remaining five counts of the indictment were for aggravated burglary and one count of aggravated robbery and a kidnapping for each victim. Each of the counts of the indictment included a firearm specification.
 {¶ 3} After trial, the jury returned the verdict of guilty on all charges. After the penalty phase of the trial, at which appellant presented only a single witness and his own unsworn statement, the jury recommended death on all aggravated murder counts. The trial court then imposed the death penalty as recommended by the jury.
 {¶ 4} On September 26, 2003, while appellant's direct appeal from his criminal conviction was still pending before the Supreme Court of Ohio, appellant filed a petition for post-conviction relief in the Franklin County Court of Common Pleas pursuant to R.C. 2953.21. The trial court denied appellant's petition for post-conviction relief without a hearing by decision and entry filed June 1, 2004. Appellant then timely appealed to this court. During the pendency of this appeal, the Supreme Court of Ohio has decided appellant's direct appeal from his criminal conviction:State v. Monroe, 105 Ohio St.3d 384, 2005-Ohio-2282.
 {¶ 5} In the appeal from his post-conviction action, appellant brings the following assignments of error:
ASSIGNMENT OF ERROR I
THE TRIAL COURT ERRED IN DENYING JONATHAN MONROE'S CLAIMS THAT HE WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AT THE PENALTY PHASE IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS AS WELL AS ART. I, §§ 2, 9, 10, AND 16 OF THE OHIO CONSTITUTION.
ASSIGNMENT OF ERROR NO. II
INTRODUCTION OF GRUESOME TRIAL PHASE PHOTOGRAPHS AT THE PENALTY PHASE DEPRIVED JONATHON MONROE OF DUE PROCESS AND A FAIR AND RELIABLE SENTENCING DETERMINATION.
ASSIGNMENT OF ERROR NO. III
THE TRIAL COURT FAILED TO MERGE THE EIGHT COUNTS OF AGGRAVATED MURDER WHEN THERE WERE ONLY TWO DEATHS AND FAILED TO MERGE THE DUPLICATIVE AGGRAVATING CIRCUMSTANCES, THUS DENYING JONATHON MONROE A FAIR AND RELIABLE SENTENCING DETERMINATION IN VIOLATION OF THE FIFTH, SIXTH, EIGHTH
AND FOURTEENTH AMENDMENTS AS WELL AS ART. I, SEC. 2, 9, 10 AND 16 OF THE OHIO CONSTITUTION.
ASSIGNMENT OF ERROR NO. IV
THE PROSECUTOR FAILED TO PROVIDE MONROE WITH MATERIAL, EXCULPATORY AND MITIGATING EVIDENCE PRIOR TO TRIAL, IN VIOLATION OF THE FIFTH, SIXTH,EIGHTH AND FOURTEENTH AMENDMENTS AND ART. I, SEC. 2, 9, 10, AND 16 OF THE OHIO CONSTITUTION.
ASSIGNMENT OF ERROR NO. V OHIO HAS FAILED TO PROVIDE AN ADEQUATE SYSTEM OF APPELLATE AND PROPORTIONALITY REVIEW IN DEATH PENALTY CASES. MONROE'S SENTENCE IS DISPROPORTIONATE AND INAPPROPRIATE.
ASSIGNMENT OF ERROR NO. VI
COUNSEL FAILED TO OBTAIN EXPERT ASSISTANCE TO ENABLE THEM TO EXPLAIN TO DEVASTING EFFECTS OF MONROE'S IMPOVERISHED BACKGROUND, DENYING MONROE THE EFFECTIVE ASSISTANCE OF COUNSEL, DUE PROCESS, AND A FAIR SENTENCING DETERMINATION.
ASSIGNMENT OF ERROR NO. VII
OHIO'S STATUTORY SCHEME FOR THE IMPOSITION OF THE DEATH PENALTY VIOLATES ARTICLE I, §§ 2, 9, 10, AND 16 OF THE OHIO CONSTITUTION, THEFIFTH, SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS, AND THE VARIOUS TREATY AND COMPACT OBLIGATIONS OF THE UNITED STATES UNDER INTERNATIONAL LAW.
ASSIGNMENT OF ERROR NO. VIII
JONATHON MONROE WAS DENIED DUE PROCESS, A FAIR TRIAL, AND THE EFFECTIVE ASSISTANCE OF COUNSEL DURING THE JURY SELECTION PROCESS, INCLUDING VOIR DIRE; DURING THE PRE-TRIAL AND MOTION PRACTICE PHASE; AND DURING THE TRIAL AND PENALTY PHASES.
ASSIGNMENT OF ERROR IX
OHIO PROVIDES AN INADEQUATE POST-CONVICTION REMEDY TO PERMIT MONROE TO FULLY AND FAIRLY VINDICATE HIS FEDERAL CONSTITUTIONAL CLAIMS UNDER THEFIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS AND ART. I, § 2, 9, 10
AND 16 OF THE OHIO CONSTITUTION.
ASSIGNMENT OF ERROR X
THE TRIAL COURT'S ACTIONS IN FAILING TO RULE ON MONROE'S REQUESTS FOR EXPERT AND INVESTIGATIVE ASSISTANCE DENIED MASON [SIC] A FULL AND FAIR OPPORTUNITY TO LITIGATE HIS CONSTITUTIONAL CLAIMS IN POST CONVICTION UNDER THE FIFTH, SIXTH, EIGHTH AND FOURTEENTH AMENDMENTS AS WELL AS ART. I, SEC. 2, 9, 10 AND 16 OF THE OHIO CONSTITUTION.
 {¶ 6} A petition for post-conviction relief in Ohio is a statutorily created procedure designed to provide an avenue to correct a violation of a defendant's constitutional rights in his criminal trial. The remedy is defined under R.C. 2953.21:
(A)(1)(a) Any person who has been convicted of a criminal offense or adjudicated a delinquent child and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States, * * * may file a petition in the court that imposed sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief. The petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief.
* * *
(3) In a petition filed under division (A) of this section, a person who has been sentenced to death may ask the court to render void or voidable the judgment with respect to the conviction of aggravated murder or the specification of an aggravating circumstance or the sentence of death.
* * *
Before granting a hearing on a petition filed under division (A) of this section, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript. * * *
 {¶ 7} The post-conviction relief process is a civil collateral attack on a criminal judgment, not an appeal of that judgment. State v. Calhoun
(1999), 86 Ohio St.3d 279, 281, 714 N.E. 2d 905, 908. It is a means by which the petitioner may allow the court to reach constitutional issues that would otherwise be impossible to review because the evidence supporting those issues is not contained in the record of the petitioner's criminal conviction. State v. Murphy (Dec. 26, 2000), Franklin App. No. 00AP-233. The petition for post-conviction relief is thus not intended to provide a defendant with a second opportunity to litigate his conviction, nor is the petitioner automatically entitled to an evidentiary hearing on the petition. State v. Jackson (1980), 64 Ohio St.2d 107,413 N.E.2d 819.
 {¶ 8} In order for the trial court to grant a hearing the petitioner must provide evidence that demonstrates a cognizable claim of constitutional error, R.C. 2953.21(C), and such evidence must demonstrate that the denial or infringement of the petitioner's constitutional rights renders the petitioner's conviction or sentence void. State v. Perry
(1967), 10 Ohio St.2d 175, 226 N.E.2d 175, paragraph four of the syllabus. If such evidentiary materials are not submitted, the trial court may deny the petition without a hearing. Murphy, citing Jackson,
supra, at 110.
 {¶ 9} The most significant restriction on Ohio's statutory procedure for post-conviction relief is that the doctrine of res judicata requires that the claims presented in support of the petition represent error supported by evidence outside of the record generated by the direct criminal proceedings. "Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from the judgment, any defense or claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment or that conviction, or on an appeal from that judgment." State v. Cole (1982), 2 Ohio St.3d 112, 443 N.E.2d 169, quoting Perry, supra, at paragraph nine of the syllabus. "Res judicata also implicitly bars a petitioner from `re-packaging' evidence or issues which either were, or could have been, raised in the context of the petitioner's trial or direct appeal." State v. Hessler, Franklin App. No. 01AP-1011, 2002-Ohio-3321, at ¶ 27.
 {¶ 10} We will first address those assignments of error in this case that we find to be barred by application of res judicata under the above-outlined authorities.
 {¶ 11} Appellant's second assignment of error asserts that the introduction of the gruesome murder-scene photographs during the penalty phase of his trial was unnecessarily inflammatory and prejudiced the jury, depriving him of due process in the sentencing determination. This error is entirely found within the record, and was the object of appellant's eighth proposition of law on direct appeal to the Supreme Court of Ohio. The issue is accordingly barred by the application of res judicata, both in the context of a post-conviction motion raising facts that are found within the record and because we are bound by the Supreme Court of Ohio's determination that no error existed in this respect. Appellant's second assignment of error is accordingly overruled.
 {¶ 12} Appellant's third assignment of error asserts that the trial court erred in failing to merge the four counts of murder arising out of each death when submitting the matter to the jury for the sentencing determination. This argument was the object of appellant's 12th proposition of law on direct appeal to the Supreme Court of Ohio, which found no error in this respect. Appellant's third assignment of error is accordingly overruled on the grounds of res judicata.
 {¶ 13} Appellant's fifth assignment of error asserts generally that Ohio has not provided an adequate statutory framework for review of death penalty cases on proportionality grounds, thereby denying appellant due process and equal protection under the law. Appellant's seventh assignment of error likewise argues that Ohio's statutory scheme for imposition of the death penalty is unconstitutional. These constitutional arguments were also made in appellant's direct appeal before the Supreme Court of Ohio in his propositions of law six and nine. Appellant's assignments of error five and seven are thus also overruled on the grounds of res judicata.
 {¶ 14} Next we turn to appellant's ninth assignment of error, which asserts that Ohio's post-conviction relief statute provides an inadequate remedy under which to vindicate his federal and state constitutional claims. Appellant's tenth assignment of error is related in that it asserts that the trial court in his post-conviction case failed to grant counsel's request for appointment of an expert to assist counsel and to provide investigative assistance in the post-conviction action.
 {¶ 15} This court has previously rejected the proposition that "Ohio's post-conviction statute does not afford an adequate corrective process."Hessler, 2002-Ohio-2231, at ¶ 85. We accordingly find no error based on this broad allegation regarding the post-conviction statute. With respect to the specific claim of error in the denial of an expert, it is clear that a defendant who has received the death sentence has a statutory right to appointed counsel to pursue a post-conviction motion. R.C. 2953.21(I). The statute, however, does not provide for appointment of experts or investigators. The Supreme Court of Ohio has specifically held that there is no constitutional right to appointment of counsel in such circumstances and the right is granted strictly by statute. State v.Crowder (1991), 60 Ohio St.3d 151, 152, 573 N.E.2d 652. There is no authority holding that a corresponding constitutional right would exist to provide appointment of an expert or investigator predicated upon the specific statutory entitlement to counsel in a proceeding in which a constitutional right to counsel would not attach. Ohio appellate courts have accordingly concluded that there is no constitutional right to appointment of an expert even where the statute provides for appointed counsel in a post-conviction proceeding. State v. Smith (Mar. 15, 2000), Loraine App. No. 98CA-007169; State v. Trummer (Dec. 16, 1998), Columbiana App. No. 96CO97. Two cases raised by appellant in support of his argument that such a right to appointment of an expert or investigator exists on a pure constitutional basis, Long v. Iowa (1966),385 U.S. 192, 87 S.C. 362, 17 L.d.2d 290, and Smith v. Bennett (1961),365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39, are clearly distinguishable because they stand, respectively, for the proposition that transcripts must be provided and filing fees waived for indigent defendants pursuing post-conviction relief, when a state has chosen to establish a post-conviction mechanism by statute. These cases do not stand for the more expansive proposition that the state must provide appointed and state-funded experts and investigators in such a proceeding. Appellant's ninth and tenth assignments of error accordingly do not demonstrate reversible constitutional error based on the statutory framework under which Ohio provides post-conviction relief to defendants, and both assignments of error are overruled.
 {¶ 16} Appellant's fourth assignment of error asserts that the trial court erred in failing to find that there was sufficient evidence to warrant a hearing on the question of whether the prosecution in appellant's criminal trial had failed to provide the defense with material exculpatory and mitigating evidence prior to trial. While appellant does specifically aver in his petition for post-conviction relief that defense counsel filed numerous discovery motions specifically requesting evidence obtained by law enforcement officials during the investigation, and that the state failed to disclose additional exculpatory material or mitigating evidence, appellant never particularizes the information withheld or its exculpatory value.
 {¶ 17} "The suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland (1963), 373 U.S. 83,83 S.Ct. 1194, 1196-1197, 10 L.Ed.2d 215. In order to establish a Brady
violation, a defendant must establish three elements: (1) that the prosecution withheld evidence, (2) that the defense was not aware of the evidence, and (3) that the evidence withheld was material and exculpatory. State v. Johnston (1988), 39 Ohio St.3d 48, 529 N.E.2d 898, paragraph four of the syllabus; United States v. Agurs (1976), 427 U.S. 97,103, 96 S.Ct. 2392, 49 L.Ed.2d 342. Appellant in the present case has presented no specifics regarding the evidence withheld or its exculpatory or mitigating value, he has merely asserted that the prosecution did not respond to discovery requests and motions. "Apart from defendant's bare assertions, in the absence of any facts indicating prosecutorial misconduct, the trial court properly held that a hearing was not warranted" in a defendant's post-conviction petition. State v. Zerla
(Sept. 25, 1997), Franklin App. No. 96AP-1583. We accordingly find that appellant has not established any error on the part of the trial court in overruling his petition for post-conviction relief on the basis of a purported Brady violation, and appellant's fourth assignment of error is accordingly overruled.
 {¶ 18} We lastly turn to appellant's first, sixth, and eighth assignments of error, which all assert that he was not provided his constitutionally guaranteed effective assistance of counsel at trial, and that he introduced sufficient evidence outside the record in support of his post-conviction motion to establish a constitutional violation in this respect. As the three assignments of error raise similar legal grounds and, to a great extent, rest on a similar factual basis, we will discuss and address them together.
 {¶ 19} Appellant asserts that he was denied effective assistance of trial counsel in violation of his rights under the Sixth and Fourteenth
Amendments to the United States Constitution. In order to establish a claim of ineffective assistance of counsel, a defendant must first demonstrate that his trial counsel's performance was so deficient that it was unreasonable under prevailing professional norms. Strickland v.Washington (1984), 466 U.S. 668, 687, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674. The defendant must then establish "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 693.
 {¶ 20} "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Id. at 689, quotingMichel v. Louisiana (1955), 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83. A verdict adverse to a criminal defendant is not of itself indicative that he received ineffective assistance of trial counsel. State v.Hester (1976), 45 Ohio St.2d 71, 75, 341 N.E.2d 304.
 {¶ 21} The principal unprofessional error alleged on the part of trial counsel herein is a failure to investigate appellant's family background and resulting psychosocial characteristics that could have been presented to the jury as a mitigating factor in the penalty phase of the trial. Appellant also alleges that trial counsel was deficient in failing to explain to appellant the purpose and impact of the penalty phase of the trial, and that in the absence of such reliable information appellant understood the penalty phase to be merely an opportunity for him and his family to "beg" for his life, a posture that appellant apparently refused to adopt. Also in connection with this, appellant asserts that counsel failed to request an evaluation of appellant's competence based on his decision to forego much of his opportunity to present mitigation. In addition, appellant asserts that counsel refused to allow appellant to pursue an alibi defense when appellant's relatives were willing and able to testify in support of the alibi defense, and that counsel failed to adequately cross-examine prosecution witnesses to bring out factors undermining their credibility.
 {¶ 22} Finally, appellant argues that counsel was ineffective during the jury selection process, and that the trial court's conduct of jury selection proceedings was violative of appellant's constitutional right to a fair and impartial jury. These last two arguments refer to matters entirely within the record and are accordingly barred by res judicata. We will examine the remaining arguments in support of appellant's allegation of ineffective assistance of trial counsel with reference to the evidentiary material presented by appellant in support of his petition for post-conviction relief. Principally, this consists of the trial transcript and three affidavits.
 {¶ 23} In his own affidavit, appellant averred that he had only limited contact with his attorneys prior to trial; that he wanted to present an alibi defense, including the testimony of his family members; and that, after these family members had been excluded from presence at the trial because they were potential witnesses, counsel suddenly at the close of trial told the judge that family members no longer wished to testify. Appellant further avers that a prosecution witness, Chuck White, a jailhouse snitch, who testified that appellant had admitted committing the crimes, was a former cellmate of another prosecution witness, Shannon "Killer Bunny" Boyd, who had admittedly participated in the murders of Deccarla Quincy and Trevinna Simmons. Appellant's affidavit asserts that his defense counsel failed to adequately bring out on cross-examination that Chuck White could not have known appellant for the length of time claimed, and that Chuck White's testimony might have been influenced by his previous time as a cellmate with Shannon Boyd, who as an active participant in the murders had every motive to minimize his own culpability and maximize that of appellant.
 {¶ 24} Appellant further asserts in his affidavit that defense counsel failed to investigate or proffer letters written by Shannon Boyd admitting greater culpability in the murders and requesting that appellant take the blame. Appellant generally asserts that counsel repeatedly failed to question witnesses on specific subjects or follow up on information provided by appellant.
 {¶ 25} Finally, appellant's affidavit sets forth assertions that trial counsel failed to adequately explain the purposes of the penalty phase of the trial, the importance of presenting mitigating evidence therein, and the character of such mitigating evidence that would be admissible. Appellant claims that he was led to believe that the only purpose of the penalty phase was for him and his family to beg for a lesser sentence.
 {¶ 26} Appellant also presented the affidavit of James F. Crates, a mitigation specialist retained at trial. Crates' affidavit, based largely on his recollections of his pre-trial investigation, describes the financial and emotional hardship experienced by appellant as a child, and the impact upon appellant of his parents, whose parenting styles seem to have varied only in the narrow spectrum between abuse and neglect. While Crates' affidavit does give great detail regarding the "unspeakable" circumstances of appellant's upbringing, the affidavit does not outline the circumstances under which this information, which clearly was unearthed prior to the penalty phase of the trial, was ultimately not presented by defense counsel, and specifically whether this was due to appellant's alleged refusal to "beg" for his life at the penalty phase by presenting mitigating evidence.
 {¶ 27} The final affidavit presented by appellant in support of his petition for post-conviction relief was that of Donald Schumacher, an experienced death-qualified criminal defense attorney who has represented 40 defendants indicted for capital crimes in Ohio. Schumacher's affidavit addresses general principles of representation of clients in capital cases and sets forth prevailing professional norms, principally with respect to the need to investigate and present potential mitigating factors at the penalty phase. The affidavit stresses the interplay between effective representation through the guilt phase and subsequent efforts in the penalty phase if a guilty verdict is returned. While the affidavit develops in a scholarly form the law on various specific areas of effective representation of such cases, it does not specifically relate these to the conduct of appellant's trial as it occurred.
 {¶ 28} We will first address appellant's contention that his trial counsel failed to adequately investigate his background and his mental health history. The record reveals that the trial court authorized expenditures for a mitigation expert, a psychologist, and an investigator in the case.
 {¶ 29} The affidavit of the mitigation specialist, Crates, which accompanies appellant's petition for post-conviction relief, is in fact counterproductive to appellant's petition because it evidences a thorough and effective inquiry into appellant's personal and family history. Crates interviewed family members in appellant's original hometown in West Virginia, and thoroughly developed the circumstances of appellant's admittedly harsh upbringing, which included an absent and abusive alcoholic father, a drug-abusing and alcoholic mother who exhibited symptoms of mental illness, including displays of supernatural mysticism, and a home environment often lacking in heat, electricity, and running water. Since appellant does not present specific information either in his own affidavit or other materials submitted to demonstrate that investigation into mitigating circumstances was lacking, no deficient conduct on the part of trial counsel can be ascertained in this respect.
 {¶ 30} The record also reveals that a psychologist, Dr. Dennis Eshbaugh, consulted with defense counsel and examined appellant. Appellant does concede in his affidavit that he met with a psychologist working with his trial counsel. Compensation for Dr. Eshbaugh was authorized by the trial court. The record further discloses a request by counsel for approval of an investigator, Gary Phillips, retained by defense counsel. His role in the pre-trial preparation is less clear, but the court also approved compensation for his services. Because the record demonstrates that efforts by defense counsel to develop mitigation evidence appear on their face to be sufficient, and appellant supported no specific allegation in his petition that additional efforts would have developed information not already available to the defense, we find that the trial court did not err in concluding that no cognizable claim for ineffective assistance of trial counsel was presented on this basis.
 {¶ 31} The second prong of appellant's argument on this issue is that the defense, even if it adequately developed evidence to be introduced in mitigation, failed to effectively place this evidence before the jury, both by refusing to present witnesses and allowing appellant to unreasonably waive the opportunity to present mitigation at the penalty phase. The defense only called a single witness, Eliza Dillard, a family friend from appellant's childhood hometown of Omar, West Virginia. Defense counsel also allowed appellant to present his unsworn statement allowed under R.C. 2929.03(A)(1), thus avoiding the difficulty of appellant testifying under oath, which would have opened the door to inquiry into appellant's conviction in an unrelated murder case.
 {¶ 32} Mrs. Dillard presented testimony regarding the circumstances of appellant's difficult childhood in West Virginia, and the generally neglectful conduct of his parents. She stated that she had known appellant between the ages of five and ten, after which he moved to Columbus and she had only intermittent contact with him and his family. She described the Omar area, and specifically appellant's neighborhood of Superior Bottoms, as rural, poor, and largely devoid of effective social services. Appellant, even as a small child, was forced to work odd jobs. Although appellant's paternal grandfather was well-off by local standards, he disliked appellant's mother so intensely that he provided little assistance to appellant and his siblings, even in the most extreme need. Appellant's father was illiterate, and although a skilled carpenter, was mostly absent and provided little visible support. Appellant's mother frequented a house in the neighborhood known to harbor drug and alcohol use and immoral conduct.
 {¶ 33} Defense counsel then addressed the court, making the following statement prior to allowing appellant to make his unsworn statement:
MR. JANES: YOUR HONOR, HERE'S OUR POSITION. WE STARTED TO INDICATE TO THE COURT THAT IT WAS OUR BELIEF THAT WE WOULD CALL ONE WITNESS PLUS MR. MONROE UNLESS THERE WAS A PROBLEM WITH OPENING THE DOOR. WE CALLED THAT WITNESS, THAT WITNESS HAS COMPLETED HER DIRECT AND CROSS EXAMINATION.
NOW, IT IS OUR INTENT TO CALL OR ALLOW MR. MONROE TO MAKE AN UNSWORN STATEMENT AND THEN TO INTRODUCE OUR EXHIBITS AND THEN REST.
NOW, BASED ON THAT, MR. MONROE, WHO DID NOT WANT HIS FAMILY TO PARTICIPATE IN THIS AS WITNESSES, IN THE MITIGATION, AND SPECIFICALLY INSTRUCTED MR. RIGG AND I NOT TO CALL ANY FAMILY MEMBERS IN MITIGATION; AND WE HAVE HONORED HIS WISHES.
BUT HE NOW WOULD LIKE TO HAVE THE FAMILY MEMBERS HERE IN THE COURTROOM, TO BE ALLOWED TO HEAR HIS UNSWORN STATEMENT.
SO YOUR HONOR, WE'RE BASICALLY SAYING WE'RE FINISHED REALLY SO I CANNOT IMAGINE ANY CIRCUMSTANCE WHERE WE WOULD BE CALLING ANY OF THE FAMILY MEMBERS, BUT I WANTED TO MAKE THE COURT AWARE OF OUR SITUATION.
NOW, THERE IS ONE OTHER THING, AND JUST TO MAKE YOU UNDERSTAND, JUDGE, WE HAVE A WHOLE FAMILY OUT HERE WHO ARE VERY, VERY UPSET WITH US BECAUSE THEY BELIEVE WE ARE KEEPING THEM OUT OF THE COURTROOM, AND ALL WE'RE DOING IS EXERCISING MR. MONROE'S DESIRES TO HAVE THEM NOT PARTICIPATE IN THE MITIGATION, AND YOUR HONOR, WE HAVE NOT BEEN ABLE TO BE THAT BLUNT WITH THEM, AND NOW WE HAVE ACCOMPLISHED WHAT WE WANTED TO ACCOMPLISH, AND NOW WE WOULD LIKE TO MOVE TO THE UNSWORN STATEMENT.
 {¶ 34} Thereafter, appellant presented his unsworn statement:
MR. MONROE: I'M SURE YOU ARE ALL TIRED, YOU ALL BEEN ON THIS SINCE THE TRIAL STARTED. I GUESS I ASK MY MOTHER AND FATHER NOT TO TAKE THE STAND, I DID NOT ASK THEM TO TAKE THE STAND IN MY DEFENSE.
I HAVE A STATEMENT THAT I HAVE AND I WANT TO READ IT TO YOU.
I HAVE, WHEN I READ IT TO YOU, IT'S DIRECTED TO MY FAMILY. I DON'T REALLY CARE HOW YOU TAKE IT, IT'S NOT TO BE TAKEN ANY CERTAIN WAY, BUT JUST BASICALLY IT'S FOR MY FAMILY.
I DON'T WANT ANY OF THEM GETTING ON THE STAND TODAY AND BEGGING OR PLEADING FOR MY LIFE, I WONT' DO IT EITHER.
I HAVE NOT BEEN GIVEN A FAIR TRIAL. IT'S NOT YOUR FAULT I HAVE NOT BEEN GIVEN A FAIR TRIAL.
NOW, I JUST WANT TO READ MY STATEMENT. FIRST, I'D LIKE TO GIVE MY CONDOLENCES TO THE FAMILIES OF THE VICTIMS.
THE SECOND THING I WOULD LIKE TO SAY IS I'M NOT HERE BEGGING FOR OR PLEADING FOR MY LIFE. I DID ENOUGH BEGGING AND PLEADING AS A KID WHEN I WAS EIGHT YEARS OLD. WE HAD NO WATER, ELECTRIC, OR FOOD IN THE HOUSE, AND NO FATHER PROVIDER, AND OFTEN I WENT DOOR TO DOOR ASKING FOR WORK.
I WOULD CUT YOUR GRASS, RAKE YOUR LEAVES, TAKE YOUR TRASH OUT, I WOULD FIND WORK SOMEHOW IF THERE WAS NO WORK. NO WORK, I WOULD RESORT TO BEGGING. I DON'T CARE WHAT IT IS, JUST I SEE AND IF I HAVE NOT EATEN ALL DAY UNTIL I DO THEN THEY WON'T EAT EITHER.
I AM 25 YEARS OLD AND I REFUSE TO BEG FOR ANYTHING. BUT IT'S BEEN A LONG TRIAL AND I AM TIRED AND I'M SURE YOU ARE TIRED AS WELL.
I RESPECT ALL OF YOUR DECISIONS, MAINLY BECAUSE BASED ON THE EVIDENCE PRESENTED TO YOU. HOWEVER, I DO NOT AGREE WITH ALL THIS, THIS IS MY LAWYERS', MY LAWYERS' WHO MADE THIS TRIAL.
I KNOW IT'S NOT FAIR. ONE OF THE THINGS I DISAGREE WITH IS THE FACT THAT MY LAWYERS DECIDED NOT TO PRESENT LETTERS THAT WERE WRITTEN TO ME BY SHANNON BOYD OFFERING ME MONEY TO SAY, TO SAY I DID THESE HORRIBLE CRIMES.
THE LETTERS TOLD ME EXACTLY WHAT HE WANTED ME TO SAY, BUT IF I DID ALL THE THINGS HE TESTIFIED TO, I DID THESE HORRIBLE CRIMES THEN WHY DID HE EXPLAIN WHAT TO DO AND SAY, NONE OF THESE THINGS ARE ANY OF YOUR FAULT, NOR ANY OF MY SHORTCOMINGS OR MY SITUATION OR MY FAMILY'S FAULT.
THERE HAVE BEEN A LOT OF PEOPLE LATELY TO IMPLY MAYBE I'M NOT IN THIS SITUATION BECAUSE OF WHAT OR THE WAY I WENT THROUGH COMING UP AS A KID, AND MAYBE MY FATHER IS TO BLAME, AND MAYBE I SHOULD BLAME MY FATHER WHO WAS NOT THERE FOR ME, AND MY FAMILY.
MAYBE BECAUSE AROUND EIGHT OR NINE OR TEN, MY MOTHER COULD NOT WORK, COULD NOT WORK OUT THERE. I WAS NOT BEGGING OR CRYING FOR ANYTHING.
HE HANDED ME A FISHING ROD AND IT WAS HIS FAVORITE FISHING POLE AND HE NEVER, NEVER, NEVER WOULD LEAVE IT ANYWHERE IF HE WAS NOT PLANNING ON RETURNING, YOU KNOW, HE WAS SHOWING ME THAT HE WAS COMING BACK. HE ASSURED ME THAT HE WAS COMING BACK, AND SO HE WANTED ME TO HOLD IT UNTIL HE CAME BACK FOR US, BUT HE NEVER CAME BACK FOR US.
I OFTEN THOUGHT IT WAS MY FAULT, MAYBE IF I LEFT AND RAN AWAY HE WOULD COME BACK AND BE WITH MY FAMILY BUT I WOULD NOT SEE HIM.
MAYBE I SHOULD BLAME IT ON MY MOTHER FOR BEING DEPRESSED, FOR MY FATHER NOT BEING THERE, AND FOR STARTING TO DRINK AND SPENDING MOST OF THE MONEY THAT I MADE WORKING CUTTING GRASS ON ALCOHOL, AND LATER ON DRUGS.
HOW CAN I BLAME MY FATHER WHEN HE BLAMED HIS FATHER FOR HIS ACTIONS, HE MOSTLY BLAMED HIS FATHER, BUT THEN I COULD GO ON AND ON, BUT HOW COULD I BLAME MY MOTHER. SHE WAS ABUSED AND MOLESTED AS A CHILD BY HER FATHER.
HOW COULD ANYONE BE A GOOD MOTHER AND A GOOD FATHER IF NOT RAISED BY GOOD PARENTS. IF YOU ARE TOLD WHAT YOU'RE TAUGHT AND YOU WENT THROUGH IN YOUR LIFE WHAT MY PARENTS WENT THROUGH IN THEIR LIVES, SO I PLACE NO BLAME ANYWHERE, AND I LEFT MY FAMILY'S REGARDS IN THE PAST — BECAUSE GOING THROUGH TOUGH TIMES MADE ME WHO I AM TODAY.
AND I HAVE NOTHING AS A CHILD, AND MAYBE IF I COULD GIVE MY FAMILY EVERYTHING, AND I AM OLD ENOUGH TO TAKE CARE OF THEM AND IF I TRIED, AND IF I COULD HAVE MADE IT EASIER ON MY YOUNGER BROTHER AND SISTERS, AND SUPPORTED MY MOTHER AS I WANTED TO DO.
AND I WENT ABOUT IT THE WRONG WAY BY SELLING DRUGS, AND I THOUGHT THAT MY FAMILY THAT IT WOULD BE EASIER FOR THEM TO GET THEIR EDUCATION, AND — OKAY, FOR THESE REASONS I'M NOT PROUD OF MYSELF AND I CANNOT AND WILL NOT PLEAD OR BEG FOR MY LIFE.
WHY SHOULD I BEG FOR MY LIFE, THAT IS WORSE THAN LIFE OR DEATH, AND TO AVOID DEATH FOR THE COMFORT OF A LIFE. LIFE COSTS ME PAIN AND WORRY AND DEATH IS NOTHING BUT PEACE AND CALM SO WHY SHOULD I AVOID THAT? WHY SHOULD I TRY.
LIKE I SAID BEFORE, I RESPECT ALL OF YOUR DECISIONS AND I THINK THAT IF THE EVIDENCE IS PRESENTED TO YOU THE WAY I THINK IT SHOULD HAVE BEEN, I DON'T THINK I WOULD BE SITTING HERE BEGGING FOR MY LIFE NOW.
WELL, I'M NOT BEGGING FOR LIFE OR WHATEVER YOU WANT TO CALL IT, I'M NOT BEGGING OR WHATEVER YOU WANT TO CALL IT, OKAY.
THANK YOU FOR YOUR TIME. GOD BLESS YOU.
 {¶ 35} The assertions in appellant's affidavit in his petition for post-conviction relief that he was never adequately informed by trial counsel of the purpose of the mitigation process are directly contradicted by evidence in the trial record, particularly appellant's own unsworn statement, that appellant was sufficiently aware of the nature and purpose of the mitigation process, and simply made the deliberate decision not to avail himself of the opportunity to present such evidence. The facts of this case do not support the nuance invoked by appellant, that is, that he was not informed of the distinction to be made between the opportunity to "beg" for his life and the opportunity to present evidence by which the jury could determine the just and appropriate for his acts, taking into consideration all aspects of the crimes and the person committing it. The mere fact that an attorney has honored or has been unable to alter a defendant's desire not to present mitigation evidence, does not, of itself, establish ineffective assistance of trial counsel. State v. Cowans (1999), 87 Ohio St.3d 68-80-81, 717 N.E.2d 298; State v. Keith (1997), 79 Ohio St.3d 514,684 N.E.2d 47. While appellant now wishes to attribute his choice to a lack of information, the record sufficiently reflects that appellant made his decision not to present mitigation evidence out of defiance rather than ignorance of the proceedings.
 {¶ 36} Based on the foregoing, we find that appellant's petition does not present sufficient evidence under which the trial court would have been compelled to hold an evidentiary hearing in order to ascertain whether appellant received ineffective assistance of trial counsel based upon a failure to investigate and uncover further mitigating evidence that could have been presented at the penalty phase, and a failure on the part of trial counsel to adequately inform appellant as to the opportunity presented as to the mitigation process.
 {¶ 37} Turning to appellant's contention that trial counsel was ineffective for failure to develop the alibi defense, the record contains some discussion by counsel with the trial court regarding the reluctance of the witnesses to testify because of the passage of six years between the occurrence of the crime and the time of trial. (Tr. 1211-1212.) The ambiguous attitudes of the witnesses, counsel postulated, would have made such testimony counterproductive and caused more harm then good; by association, other witnesses presented by the defense would have lost credibility. Id. Appellant's affidavit in the present action presents no specifics as to the content of the alibi testimony proposed, and appellant's own affidavit as to what others might have testified is not competent to establish what that testimony would have been and its value to the defense. A defendant's own self-serving affidavit, at least insofar as it sets forth matters outside his personal knowledge, alleging a constitutional deprivation will not compel a hearing in a post-conviction hearing. State v. Combs (1994), 100 Ohio App.3d 90, 98,652 N.E.2d 205.
 {¶ 38} We now turn to appellant's contention that trial counsel was ineffective because counsel failed to request that appellant be examined for competency after appellant partially waived the presentation of mitigation evidence. Nothing in testimony in the original trial or in the post-conviction proceeding, including appellant's own documentation in the post-conviction action, supports the view that appellant was or is incompetent. While the Supreme Court of Ohio in State v. Ashworth
(1991), 85 Ohio St.3d 56, 706 N.E.2d 1231, paragraph one of the syllabus, held that a court must, in a capital case, conduct an inquiry of a defendant on the record to determine whether the decision to forego presentation of all mitigating evidence is knowing and voluntary, that case is distinguishable from the present one in that in appellant's case some mitigation evidence was presented. Moreover, a defendant's decision in a death penalty case to forego adequate attempts to present mitigation "does not by itself call his competence into question." State v. Tyler
(1990), 50 Ohio St.3d 24, 29, 553 N.E.2d 576. The defense in the present case had access to the services of a psychological expert approved by the court, and at no time chose to raise a competency defense. The present post-conviction action, although calling into question the failure to request an examination of appellant's competence, does not assert that appellant is or was incompetent, rather than merely contrary or misguided. We accordingly find no unprofessional error on the part of trial counsel in this respect.
 {¶ 39} Turning to appellant's contention that trial counsel was ineffective for failing to adequately investigate or cross-examine Chuck White, the jailhouse snitch, regarding White's history as a cellmate of Shannon Boyd, the co-perpetrator of the murders for which appellant was convicted, the record reflects that defense counsel, in fact, developed a fair amount of information regarding this very subject. (Tr. 1111-1132, 1149-1155.) White and Boyd, in subsequent testimony, admitted that they had shared a cell, and White on cross-examination repeated certain self-incriminating statements made by Boyd during that period. Appellant does not further detail in his petition how additional questioning would have elicited information that would have resulted in a different verdict. We accordingly find that the petition does not present sufficient evidence of prejudicial unprofessional errors by trial counsel in this respect.
 {¶ 40} Finally, appellant also alleges that counsel failed to present at trial evidence of letters sent by Boyd to appellant in which Boyd admitted his principal role in the murders, and requested that appellant, who was already serving a term for an unrelated murder, take the blame for the murders of Deccarla Quincy and Travinna Simmons. Appellant does not explain in his petition how evidence of such letters could have been presented without putting appellant on the stand, which counsel, as a matter of sound tactical choice, was intent to avoid. Moreover, the letters themselves have not been presented in support of this petition, and we again have only appellant's self-serving affidavit to substantiate their existence at all.
 {¶ 41} In accordance with the foregoing, we find that appellant did not present sufficient evidence to establish the need for a hearing on his claims of ineffective assistance of trial counsel in his original trial, and the court in his post-conviction action did not err in denying appellant's conviction without a hearing on these claims. Appellant's first, sixth, and eighth assignments of error are accordingly overruled.
 {¶ 42} In summary, appellant's ten assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas denying appellant's post-conviction petition for post-conviction relief pursuant to R.C. 2953.21 is affirmed.
Judgment affirmed.
Deshler, J., concurs.
Bryant, J., concurs in part and dissents in part.
Deshler, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.