[Cite as *State v. Walker*, 2025-Ohio-60.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2024-CA-8 |
| | : | |
| v. | : | Trial Court Case No. 22-CR-00080 |
| | : | |
| JESSICA R. WALKER | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on January 10, 2025

. . . . . . . . . . .

JESSICA R. WALKER, Appellant, Pro Se

DREW E. WOOD, Attorney for Appellee

. . . . . . . . . . . .

HUFFMAN, J.

{¶ 1} Jessica R. Walker appeals pro se from the denial of her petition for post-conviction relief. As discussed below, Walker's claims were barred by res judicata, she was not entitled to a hearing on her petition, and the denial of her petition was not against the manifest weight of the evidence. The judgment of the trial court is accordingly

affirmed.

## Facts and Procedural History

{¶ 2} This Court set forth the facts and procedural history of this case in Walker's direct appeal of her conviction, *State v. Walker*, 2023-Ohio-4690 (2d Dist.). Following a jury trial in the Darke County Court of Common Pleas, Walker appealed her conviction for one count of felonious assault and one count of failure to stop after an accident.

On December 30, 2021, Robert Yant, who lived across the street from the Butler Township garage and parking lot on Grubbs Rex Road in Darke County, temporarily parked his RV in the empty township lot to clear some space in his yard. At approximately 3:00 p.m., Yant began to hear a car horn honking outside and, when it did not stop after several minutes, he went out to investigate. Yant noticed a blue Mini Cooper parked in the township lot, so he walked over to see if the occupant needed assistance.

When he reached the vehicle, the lone occupant (later identified as Walker) began yelling and cussing at him, demanding that he remove his vehicle from the township lot. Hoping to avoid more conflict, Yant went back home to get his keys. He also enlisted his wife, Catherine, to help guide the large motor home back into their yard. Meanwhile, Walker made an angry and hostile call to the Darke County Sheriff's Office to complain about the RV.

As Yant drove the vehicle down the road to turn it around, Catherine was left standing outside waiting for the RV's return. When Walker noticed

her, Walker began yelling at her, too. Catherine yelled coarsely in response, but soon went back inside.

After Yant returned the motor home to his lot, he walked back across the road to his mailbox to check the mail. As Yant turned around to walk back across the street to his house, he heard tires on the gravel and looked up just in time to see Walker, driving on the wrong side of the road, coming directly at him.

The Mini Cooper struck Yant head-on, causing him to roll off the hood and land in the middle of the road. Trial testimony indicated that that [sic] Walker momentarily stopped to yell, "I hope you fucking die," before accelerating away, running the stop sign at the corner of Grubbs Rex Road and State Route 127 in the process. Catherine, who witnessed the entire incident, came to her husband's aid. She called 911, and Yant was transported to the hospital with injuries to his knees and legs. A few days later, he began to experience issues with his right hand and wrist which eventually led to multiple surgeries.

Based on Walker's call to deputies about the vehicle in the township lot and then the 911 call from Catherine, Darke County deputies were soon able to identify Walker as the suspect. Captain Sean Trissel and Sergeant Steve Mills spoke with Walker about the incident. She admitted that she had been in the parking lot, that she had called deputies to complain about the RV, and that there was a handprint on the hood of her car.

Walker was indicted on two counts of felonious assault (Count 1 – serious physical harm, Count 2 – deadly weapon), one count of vehicular assault (Count 3), and failure to stop after an accident (Count 4), as well as three counts of disruption of public services, which were not tried with the other counts and are not a part of this appeal. The case proceeded to trial on January 30-31, 2023. The jury heard testimony from Yant, Catherine, Captain Trissel, and Sergeant Mills. The jury was also presented with dozens of exhibits to consider, including Yant's medical records and photographs of his injuries, pictures of the Mini Cooper, recordings of 911 calls, and audio of the interaction between deputies and Walker. After three hours of deliberation, the jury returned guilty verdicts on Counts 2 and 4 (felonious assault – deadly weapon and failure to stop) but found Walker not guilty on Counts 1 and 3 (felonious assault – serious physical harm and vehicular assault). She was then sentenced to 3 to 4½ years in prison for felonious assault and a concurrent six-months in jail for failure to stop.

Walker filed her first notice of appeal on June 13, 2023, but thereafter a new charge was filed – obstruction of official business, a fourth-degree misdemeanor. She pleaded guilty to that charge in exchange for the dismissal of the disruption of public service counts. A second notice of appeal – containing all her convictions – was filed on September 25, 2023. In it, Walker raise[d] three assignments of error in which she allege[d] that her conviction was based on insufficient evidence, that her Fifth

Amendment right to remain silent was violated when the prosecutor commented on her failure to testify, and that the trial court failed to properly advise her on the repercussions of violating post-release control.

*Id.* at ¶ 2-9. This Court affirmed in part and reversed in part the judgment of the trial court and remanded the matter for resentencing as to the imposition of post-release control only. *Id.* at ¶ 29.

{¶ 3} Walker filed her pro se petition for post-conviction relief on January 3, 2024. After the State responded, the court overruled the motion on May 15, 2024.

{¶ 4} Walker's brief asserts three assignments of error which we will consider together. They are as follows:

THE COURT ERRED IN FINDING APPELLANT'S CLAIMS FOR RELIEF BARRED BY RES JUDICATA.

THE COURT ABUSED ITS DISCRETION IN DENYING APPELLANT'S POSTCONVICTION RELIEF PETITION WITHOUT A FULL HEARING.

THE COURT'S DENIAL OF APPELLANT'S PETITION FOR POSTCONVICTION RELIEF WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 5} R.C. 2953.21 governs petitions for post-conviction relief. "A petition for 'postconviction relief is a means by which the petitioner may present constitutional issues to the court that would otherwise be impossible to review because the evidence supporting those issues is not contained in the record of the petitioner's criminal

conviction.' " *State v. Mott*, 2022-Ohio-2894, ¶ 10 (2d Dist.), quoting *State v. Monroe*, 2015-Ohio-844, ¶ 37 (10th Dist.). The postconviction relief process is a civil collateral attack on a criminal judgment and is not an appeal of the judgment. *State v. Calhoun*, 86 Ohio St.3d 279, 281 (1999).

{¶ 6} The petitioner "may file a supporting affidavit and other documentary evidence in support of the claim for relief." R.C. 2953.21(A)(1)(b). The trial court is required to consider the petition and any supporting affidavits and documentary evidence. R.C. 2953.21(D). "When the evidence a defendant relies upon [is] dehors the record that evidence must meet a threshold of cogency." *State v. Hill*, 2005-Ohio-3176, ¶ 8 (2d Dist.), quoting *State v. Lawson*, 103 Ohio App.3d 307 (12th Dist.1995). "Cogent evidence is that which is more than 'marginally significant' and advances a claim 'beyond mere hypothesis and desire for further discovery.' " *Id*.

{¶ 7} A postconviction relief petitioner is not automatically entitled to a hearing. *Calhoun* at 282. Instead, "a trial court has a gatekeeping role as to whether a defendant will even receive a hearing." *State v. Gondor*, 2006-Ohio-6679, ¶ 51. Before granting a hearing on a petition, the trial court shall determine whether there are substantive grounds for relief. *State v. Perry*, 2016-Ohio-4582, ¶ 24 (2d Dist.). It is the petitioner's initial burden to provide evidence containing sufficient operative facts to show a cognizable claim of constitutional error. *State v. Kapper*, 5 Ohio St.3d 36, 37-38 (1983). "A petitioner is not entitled to a hearing if his claim for relief is belied by the record and is unsupported by any operative facts other than [his or her] own self-serving affidavit or statements in [the] petition, which alone are legally insufficient to rebut the record on

review." *Id.* "Broad conclusory allegations are insufficient, as a matter of law, to require a hearing." *State v. Coleman*, 2005-Ohio-3874, ¶ 17 (2d Dist.).

**{¶ 8}** Res judicata is applicable in all postconviction relief proceedings. *State v. Blanton*, 2022-Ohio-3985, ¶ 43. In *State v. Goldwire*, 2005-Ohio-5784, ¶ 11 (2d Dist.), this Court discussed the role the doctrine of res judicata plays in the analysis of petitions for postconviction relief:

> The most significant restriction on Ohio's Statutory procedure for post-conviction relief is that the doctrine of res judicata requires that the claim presented in support of the petition represent error supported by evidence outside the record generated by the direct criminal proceedings." *State v. Monroe*, Franklin App. No. 04AP-658, 2005-Ohio-5242. "Under the doctrine of res judicata, a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in that judgment of conviction or on an appeal from that judgment." *State v. Perry* (1967), 10 Ohio St.2d 175, 180, 226 N.E.2d 104. "Our statutes do not contemplate relitigation of those claims in postconviction proceedings where there are no allegations to show that they could not have been fully adjudicated by the judgment of conviction and an appeal therefrom." *Id.* "To overcome the res judicata bar, the petitioner must produce new evidence that renders the judgment void or voidable, and

show that he could not have appealed the claims based upon information contained in the original record." *State v. Aldridge* (1997), 120 Ohio App.3d 122, 151, 697 N.E.2d 228. " 'Res judicata also implicitly bars a petitioner from 'repackaging' evidence or issues which either were, or could have been, raised, in the context of the petitioner's trial or direct appeal.['] " *Monroe.*

"For a defendant to avoid dismissal of the petition by operation of res judicata, the evidence supporting the claims in the petition must be competent, relevant, and material evidence outside the trial court record, and it must not be evidence that existed or was available for use at the time of trial." *State v. Jackson*, 2007-Ohio-1474, ¶ 21 (10th Dist.).

{¶ 9} "We review a trial court's denial of post-conviction relief under R.C. 2953.21 for an abuse of discretion . . . ." *State v. White*, 2008-Ohio-1623, ¶ 45. "The term 'abuse of discretion' has been defined as a decision that is unreasonable, arbitrary, or unconscionable." (Citation omitted.) *State v. Howard*, 2014-Ohio-4602, ¶ 8 (2d Dist.).

{¶ 10} In her pro se petition for post-conviction relief, Walker argued that the Darke County Sheriff destroyed evidence of handprints on her car. She further argued that the grand jury proceedings were defective due to the alleged bias of the foreperson of the grand jury, Katherine Deland.

{¶ 11} Walker attached, as Exhibit A, a one minute and 35 second video that appears to have been filmed on the night of the incident herein, and we have reviewed it. In the video, by means of a flashlight shone on her vehicle in darkness, Walker identified "three fingermarks here where this individual starts to roll on my car as I'm at the stop

sign." She further identified "his hand mark, no dent, then he says as he rolls . . . you're hurting me, you're running me over." Walker states she was "actually stopped" at the time and Yant was "like rolling and then I leave." She provided her address to law enforcement and then requested "a little more light" on an area of her car and said, "that's the handprint," and "there's no dent, nothing." In identifying the marks, Walker remarked that her car was dirty. She stated that, while she was stopped, Yant said "stop hurting me and stop hitting me."

{¶ 12} Walker also attached three items as Exhibit B. Exhibit B-1 was a copy of an article from the "DailyAdvocate.com" entitled "UC Chief Ater declares run for Sherriff." It was dated September 24, 2021, and stated that "Union City Police Chief Mark Ater Jr. declared he will run for Darke County Sheriff." After noting a press release by Ater, the article stated, "Ater, in his press release, cited 'a lack of accountability in the local justice system' as another reason he is running." The emphasized portion of the quote was underlined in ink.

{¶ 13} Exhibit B-2 was an opinion piece in the "Community" section of the "Greenville Daily Advocate ● Daily Advocate.com," dated April 15, 2022, entitled " 'Old school ways' must go in sheriff's race." The piece was authored by Chris Hensley of Union City, and it noted that Katie Deland, chair of the Darke County Republican Executive Committee, recently wrote a letter to the editor of a local newspaper in support of Mark Whittaker for Darke County Sheriff. The piece further noted that Deland had used the word "re-elect" in reference to Whittaker and that Whittaker "has never been elected as sheriff, only appointed, as a temporary measure until the Primary Election. To

say Mark Whittaker should be re-elected <u>is very misleading and untrue</u>." Again, the emphasized portion was underlined in ink.

{¶ 14} Finally, Exhibit B-3 is an opinion piece in the "Community/Opinion" section of the Daily Advocate by Katie DeLand, dated April 24, 2022, in response to Henley's opinion piece. It concluded, "In short and to use his own words, Mr. Hensley's complete lack of procedural, campaign, and election knowledge is 'absolutely incredible.' I hope this clears up any confusion and reinforces my support for Sheriff Mark Whittaker."

{¶ 15} Walker did not attach any affidavits to her petition.

{¶ 16} The State responded that Walker could have litigated her claims at trial and on direct appeal.

{¶ 17} In overruling her petition, the court noted that it had presided over Walker's trial and was familiar with all the evidence, including State's Exhibits 29 and 30, which were photos of handprints on Walker's vehicle, "as well as testimony regarding the hand on the hood of the car." The court noted that a "video known to [Walker] at trial and made <u>before</u> the trial discussed the topic of the handprint on the car. This evidence was thoroughly addressed by both parties before the jury and was considered submitted to the jury before its verdict."

{¶ 18} The court further noted that "[i]n regard to the defective indictment, [Walker sought] relief solely based upon the political affiliation of the foreperson." The court noted that Walker "argues bias and prejudice without any support as to what was done or not done, said or not said by the foreperson." The court further noted that the foreperson "took an oath to hear each presentment fairly" and that there was "no evidence

presented to the contrary." According to the court, "[w]hile not dispositive, . . . the grand jury needs only to find probable cause, and the petit jury found guilty beyond a reasonable doubt." It was significant to the court that the "evidence at trial was simple and direct."

{¶ 19} Finally, the court concluded that when "evidence was presented and was known at trial," post-conviction relief is not appropriate, and "[t]his also applies to issues that were or could have been raised on appeal." The court found the State's brief persuasive and adopted the arguments therein, concluding that nothing in Walker's petition raised "any new matters not known to the defense at trial. They could have been raised but were not," and res judicata barred each claim.

{¶ 20} In her first assignment of error, Walker claims that, although "known to her at the time of trial," she was precluded from arguing on appeal that the sheriff's office tampered with evidence or using Exhibit A at trial because "presenting it at trial would have constituted waiving [her] privilege not to testify at her own criminal trial." She asserts that Exhibit A was accordingly not available for use at trial and "res judicata does not apply to her claims that the sheriff's office violated her due process rights by tampering with evidence" in order to obtain her conviction. According to Walker, Exhibit A was the only record of Yant's contact with her vehicle, "and it impeaches Yant's account of a collision." She asserts that the "degree of prejudice involved" in obtaining her conviction was high enough "to garner Crim.R. 52(B) relief in the postconviction appeal setting."

{¶ 21} Having reviewed the record, we conclude that Walker failed to comply with the statutory requirements for postconviction relief, and her arguments were barred by res judicata. Walker's petition did not contain any supporting evidentiary documents

containing operative facts that would, if proven, establish any substantive ground for relief. She also did not rely on any evidence that did not exist or was not available to her for use at trial or on appeal, a fact acknowledged by her. The video was made on the night of the incident, and the items in Exhibit B, dated in 2021 and early 2022, were or should have been known to her prior to her January 2023 trial. The trial court correctly concluded that the broad, self-serving statements in Walker's petition were insufficient to rebut the record. Accordingly, Walker failed to advance her claims beyond mere hypothesis. Res judicata barred Walker's claims, and her first assignment of error is overruled.

{¶ 22} We further cannot conclude, based upon our analysis of Walker's first assignment of error, that the court erred in failing to grant a hearing on her petition. As noted above, Walker was not automatically entitled to a hearing. In the absence of substantive grounds for relief, the trial court properly exercised its gatekeeping role in ruling on the petition without a hearing. Put differently, Walker failed to present new evidence that created a strong probability of a different result if a new trial were granted. Again, her self-serving assertions did not rebut the record on review. Walker's second assignment of error is overruled.

{¶ 23} Finally, having concluded that the trial court correctly found res judicata barred Walker's claims as a matter of law and that she was not entitled to a hearing on her petition, we need not address her third assignment of error. The dismissal of Walker's petition was procedural, rather than a substantive evaluation of the evidence. In the absence of a hearing on the petition, our analysis is limited to the procedural basis

for barring Walker's claims, and any argument regarding the manifest weight of the evidence is misplaced. Walker's third assignment of error is accordingly overruled.

{¶ 24} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

EPLEY, P.J. and TUCKER, J., concur.