[Cite as *State v. Hartman*, 2017-Ohio-7933.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 27162 |
| | : | |
| v. | : | Trial Court Case No. 2014-CR-834 |
| | : | |
| MARK HARTMAN | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 29th day of September, 2017.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

S. ADELE SHANK, Atty. Reg. No. 0022148, 3380 Tremont Road, Suite 270, Columbus, Ohio 43221
LAWRENCE J. GREGER, Atty. Reg. No. 002592, 1100 Liberty Tower, 120 West Second Street, Dayton, Ohio 45402
        Attorneys for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, Mark Hartman, appeals from a decision of the Montgomery County Court of Common Pleas granting the State's motion for summary judgment on his petition for post-conviction relief and summarily dismissing the petition without a hearing. For the reasons outlined below, the judgment of the trial court will be affirmed.

I. Course of Proceedings

{¶ 2} On July 18, 2014, the Montgomery County Grand Jury indicted Hartman on three counts of Rape, felonies of the first degree, in violation of R.C. 2907.02(A)(2). Hartman pled not guilty to the charges and subsequently waived his right to a jury trial. The matter proceeded to a bench trial. On October 10, 2014, the trial court found Hartman guilty of all three charges. Hartman moved for a new trial. The trial court overruled the motion for a new trial and sentenced Hartman to four years in prison on each of the counts of Rape, to be served concurrently. Hartman appealed from his conviction and sentence.[1]

{¶ 3} On April 27, 2015, while his direct appeal from his conviction and sentence was pending, Hartman filed a petition for post-conviction relief pursuant to R.C. 2953.21. Dkt. 5. In his petition, Hartman raised nine grounds for relief based on ineffective assistance of trial counsel and one ground for relief based on an alleged violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). After obtaining an

---

[1] For a more complete recitation of the background leading up to Hartman's trial, see our May 6, 2016 Opinion at *State v. Hartman*, 2016-Ohio-2883, 64 N.E.3d 519 (2d Dist.).

extension of time from the trial court, the State filed its answer to the petition on May 15, 2015.   Dkt. 7, 9.   The trial court issued an entry on May 19, 2015, setting a telephone status conference for June 2, 2015.   Dkt. 10.   On the date of the status conference, the trial court issued a briefing schedule for the State's motion for summary judgment, which required the State to file its motion by July 13, 2015.   Dkt. 13.

{¶ 4} The State filed its motion for summary judgment on Hartman's petition on July 13, 2015, contending that Hartman failed "to show actual or even perceived prejudice" on any of the grounds for relief in his petition.   Dkt. 21.   On May 31, 2016, the trial court granted the State's motion for summary judgment on Hartman's petition for post-conviction relief.[2]   The trial court found that Hartman's petition also was subject to dismissal without the need for an evidentiary hearing.   Dkt. 42.   Hartman now appeals from that decision.


II. The State's Motion For Summary Judgment Was Timely Filed

{¶ 5} Hartman's First Assignment of Error states:

THE   TRIAL   COURT   ERRED   IN   FINDING   THAT   HARTMAN WAIVED HIS ARGUMENT THAT THE STATE'S MOTION FOR SUMMARY JUDGMENT WAS UNTIMELY FILED.

{¶ 6} R.C. 2953.21(D) provides that either party may move for summary judgment on a petition for post-conviction relief "[w]ithin twenty days from the date the issues are

---

[2] On May 6, 2016, we affirmed the judgment of conviction and sentence in Hartman's direct appeal.   *State v. Hartman*, 2016-Ohio-2883, 64 N.E.3d 519 (2d Dist.).

raised."[3] The petition for post-conviction relief was filed on April 27, 2015. After obtaining an extension of time from the trial court, the State filed its answer to the petition on May 15, 2015. Therefore, the issues were "raised" as of May 15, 2015, which began the twenty-day period set forth in R.C. 2953.21(D). Eighteen days later, on June 2, 2015, the trial court issued a briefing schedule for the State's motion for summary judgment, which required the State to file its motion by July 13, 2015. In short, the trial court set the briefing schedule for the State's motion for summary judgment prior to the expiration of the twenty-day period set forth in R.C. 2953.21(D), but the briefing schedule allowed the State to file its motion after the expiration of this twenty-day period.

{¶ 7} Hartman contended in his opposition to the motion for summary judgment that the State's motion should be overruled as untimely because the motion was filed more than twenty days after the issues were raised. The trial court rejected Hartman's contention, finding (Dkt. 42, p 7-8):

> [T]he court, on its own initiative, scheduled a telephone conference to discuss scheduling issues relating to Mr. Hartman's petition. The parties, during this telephone conference, discussed and agreed upon the following schedule: the State's summary judgment motion to be filed on or before July 13, 2015, Mr. Hartman's response to be filed on or before August 17, 2015, with the State's reply memorandum to be filed on or before August 28, 2015. This sequence is evidenced by the court's docket which

---

[3] R.C. 2953.21 was amended by Senate Bill 139, effective April 6, 2017. This amendment did not change any of the language relevant to this appeal. However, the language that was contained in R.C. 2953.21(C) and (D) is now in R.C. 2953.21(D) and (E), respectively. For purposes of clarity and convenience, we will cite to the pre-April 6, 2017 version of the statute.

reflects the court, by entry dated May 19, 2015, scheduled the June 2, 2015 telephone conference and by the June 2, 2015 filing of a briefing schedule reflecting the indicated dates.

This sequence, the court concludes, supports a conclusion, with this conclusion consistent with this writer's recollection, that Mr. Hartman, through counsel, discussed and agreed upon a summary judgment filing date beyond the twenty day time period established by R.C. 2953.21(D). Mr. Hartman, by this acquiescence, has waived any claim the State's summary judgment motion was untimely filed under R.C. 2953.21(D).

It is further concluded, assuming a contrary conclusion regarding the timeliness of the summary judgment motion, that, nonetheless, Mr. Hartman's petition is subject to dismissal without the need for an evidentiary hearing.

{¶ 8} Hartman contends that the trial court erred in finding that he had waived any argument that the State's motion for summary judgment was untimely filed. According to Hartman, acquiescence in a briefing schedule cannot overrule the strict time limits set forth in R.C. 2953.21(D). The State responds that a number of appellate court decisions have held that the time limits in R.C. 2953.21(D) are directory to courts rather than mandatory.

{¶ 9} At oral argument, Hartman's appellate counsel cited our prior decision in *State v. Tucker*, 2d Dist. Darke No. CA1181, 1988 WL 38147 (April 18, 1988), as precedent requiring a strict application of the twenty-day period in R.C. 2953.21(D). In *Tucker*, we noted that the defendant "relie[d] upon a strict interpretation" of R.C.

2953.21(D) in arguing that the State's motion for summary judgment was untimely. But we did not adopt the defendant's strict interpretation. Rather, we found that, due to a tolling of time caused by a motion filed by the defendant, the State had filed its motion for summary judgment within the twenty-day period. *Tucker* at *5.

{¶ 10} In *State v. McCabe*, 4th Dist. Washington No. 97CA32, 1998 WL 725985 (Sept. 14, 1998), the court faced a similar situation as that faced by the trial court in the present case. In *McCabe*, the State filed its motion for summary judgment more than twenty days after it filed its answer. The State had received an extension of time from the trial court in which to file its motion for summary judgment. On appeal, the petitioner contended that the trial court erred in granting summary judgment to the State because the motion was filed outside the twenty-day period set forth in R.C. 2953.21(D). The court rejected this contention, noting that a " 'court is not required to reject late motions under the statute, though it may certainly do so.' " *McCabe* at *2, quoting *State v. Harris*, 2d Dist. Montgomery No. 13114, 1992 WL 190653, *5 (Aug. 13, 1992). The court also pointed out that the petitioner had waived the issue on appeal by failing to object to the timeliness of the motion before the trial court. *McCabe* at *2. Finally, the court concluded that even if it were to hold that the motion for summary judgment should not have been considered, such error was harmless due to the trial court's independent duty to analyze the petition under R.C. 2953.21(C).

{¶ 11} We find the analysis in *McCabe* persuasive. We conclude that the trial court could extend the time for filing a motion for summary judgment beyond the twenty days provided for in R.C. 2953.21(D). Hartman's petition for post-conviction relief was lengthy and raised a number of issues for the trial court and the State to consider. After

a status conference with the parties, the trial court issued a briefing schedule for the State's motion for summary judgment. The briefing schedule was issued prior to the expiration of the twenty-day period provided in R.C. 2953.21(D), and the parties relied on this briefing schedule when filing their memoranda in support of or in opposition to the motion for summary judgment. The trial court found that Hartman's counsel agreed to this briefing schedule during the status conference and did not object to the briefing schedule at that time. Further, the trial court found that even if the summary judgment motion had been rejected as untimely, the trial court would have dismissed the petition without a hearing pursuant to R.C. 2953.21(C).

{¶ 12} We conclude that the trial court did not err in finding that the State's motion for summary judgment was timely filed. The first assignment of error is overruled.

### III. The Trial Court's Decision To Consider Hartman's Petition Under Both The Summary Dismissal Analysis in R.C. 2953.21(C) And The Summary Judgment Analysis Under R.C. 2953.21(D) Did Not Prejudice Hartman

{¶ 13} Hartman's Second Assignment of Error states:

THE COURT ERRED WHEN IT CONFUSED AND CONFLATED THE STANDARDS FOR DISMISSAL UNDER R.C. §2953.21(C) AND FOR GRANTING SUMMARY JUDGMENT UNDER R.C. §2953.21(D).

{¶ 14} In this assignment of error, Hartman contends that the trial court confused and conflated the standards for dismissal under R.C. 2953.21(C) and for granting summary judgment under R.C. 2953.21(D). According to Hartman, the trial court considered matters outside the record in granting summary judgment despite the fact that

R.C. 2953.21(D) specifically states that the "right to summary judgment shall appear on the face of the record." Hartman lists seven instances in which the trial court cited either the affidavits attached to Hartman's petition, an affidavit attached to the State's reply in support of its motion for summary judgment, or the trial court judge's own representation of what he remembered from the trial. According to Hartman, these seven instances show that the trial court relied on evidence not "on the face of the record" in granting the State's motion for summary judgment.

{¶ 15} R.C. 2953.21(D) provides simply that the right to summary judgment "shall appear on the face of the record." On the other hand, R.C. 2953.21(C) goes into more detail as to what should be considered by the trial court, providing, in part:

> Before granting a hearing on a petition filed under division (A) of this section, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner, including, but not limited to, the indictment, the court's journal entries, the journalized records of the clerk of the court, and the court reporter's transcript.

{¶ 16} In *State v. Francis*, 2014-Ohio-443, 8 N.E.3d 371, ¶ 11-13 (12th Dist.), the court gave the following instructive analysis of the trial court's options in adjudicating a petition for post-conviction relief:

> R.C. 2953.21 provides three methods for adjudicating a PCR petition. First, under R.C. 2953.21(D), either party may move for summary

judgment on the issues raised. In ruling on a summary judgment motion in proceedings involving a PCR petition, the trial court must use the same standards set forth in Civ.R. 56(C), i.e., a party is entitled to summary judgment only if there is no genuine issue of material fact and reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. *State v. Williams*, 165 Ohio App.3d 594, 2006-Ohio-617, 847 N.E.2d 495, ¶ 23 (11th Dist. 2006). Also, in granting summary judgment, the trial court must construe any conflicts in the evidence in favor of the nonmoving party. *Id.* Summary judgment in postconviction proceedings is appropriate only if the right to summary judgment appears on the face of the record. R.C. 2953.21(D); *State v. Halliwell*, 134 Ohio App.3d 730, 736, 732 N.E.2d 405 (8th Dist.1999). Therefore, the trial court is not authorized to consider evidence "dehors" the record i.e., outside the record, in determining the motion. *Williams* at ¶ 25.

Second, under R.C. 2953.21(C), "a trial court properly denies a defendant's petition for postconviction relief without holding an evidentiary hearing where the petition, the supporting affidavits, the documentary evidence, the files, and the records do not demonstrate that petitioner set forth sufficient operative facts to establish substantive grounds for relief." *State v. Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905, paragraph two of the syllabus (1999). "In reviewing a petition for postconviction relief filed pursuant to R.C. 2953.21, a trial court should give due deference to

affidavits sworn to under oath and filed in support of the petition, but may, in the sound exercise of discretion, judge the credibility of the affidavits in determining whether to accept the affidavits as true statements of fact." *Id.* at paragraph one of the syllabus. If the court summarily dismisses the petition without holding an evidentiary hearing, it must make and file findings of fact and conclusions of law with respect to such dismissal. R.C. 2953.21(C).

Third, under R.C. 2953.21(E), if the petition and the files and records of the case fail to show that the petitioner is not entitled to relief, the court must hold a prompt evidentiary hearing on the issues raised.

{¶ 17} In *Francis*, the appellate court noted that the trial court could not grant the State's request for summary judgment on the petitioner's ineffective assistance of counsel claims because resolution of those claims was dependent on affidavits of petitioner and his trial counsel, which constituted evidence outside the record. *Id.* at ¶ 14. However, the *Francis* court ultimately construed the trial court's decision as one that summarily dismissed the petition under 2953.21(C) rather than as one that granted summary judgment to the State under R.C. 2953.21(D) based on the fact that the trial court considered the affidavit evidence and noted in its decision that a hearing was not necessary because the petitioner had failed to establish substantive grounds for relief in his petition. *Id.* at ¶ 15.

{¶ 18} The trial court in the present case, unlike the trial court in *Francis*, made it clear that it was denying Hartman's petition under both a summary dismissal analysis pursuant to R.C. 2953.21(C) and a summary judgment analysis pursuant to R.C.

2953.21(D). Dkt. 42, p. 6-8. Therefore, in order to establish prejudicial error, Hartman will need to show that the trial court improperly dismissed the petition under both R.C. 2953.21(C) and (D). *McCabe,* 1998 WL 725985 at *2 (holding that even if the State's motion for summary judgment was untimely, the trial court's consideration of the motion would have been harmless error because R.C. 2953.21(C) requires the trial court to sua sponte analyze the petition).

{¶ 19} Hartman contends that the trial court improperly relied on the affidavit of K.L. and the affidavit of Hartman in ruling on the State's motion for summary judgment. Hartman Appellate Brief, p. 17. Hartman also criticizes the trial court's consideration of the affidavit of Detective Norris attached to the State's reply memorandum in support of its motion for summary judgment. Finally, Hartman cites four instances in which the trial court judge referenced his own recollections as support for the grant of summary judgment. *Id.* at 19. According to Hartman, these seven total instances in which the trial court considered evidence outside the record requires us to reverse the trial court's decision granting the State's motion for summary judgment on Hartman's petition. We do not agree. As discussed below in our analysis of the remaining assignments of error, the trial court's references to matters outside the record were not necessary to its decision on the motion for summary judgment. Further, the trial court's conclusion that Hartman's petition was subject to summary dismissal without a hearing pursuant to R.C. 2953.21(C) is supported by the record, which renders moot any alleged error by the trial court in considering evidence outside the record in ruling on the State's motion for summary judgment.

{¶ 20} We conclude that Hartman has failed to establish prejudicial error in the trial

court's decision to consider Hartman's petition under both R.C. 2953.21(C) and (D).   The second assignment of error is overruled.

## IV. The Trial Court Properly Dismissed The First Ground For Relief In Hartman's Petition

{¶ 21} Hartman's Third Assignment of Error states:

THE COURT ERRED WHEN IT FOUND THAT HARTMAN HAD NOT MET HIS INITIAL BURDEN TO RAISE SUBSTANTIVE ISSUES SUPPORTED BY EVIDENCE DEHORS THE RECORD (§2953.21(C)) BUT THEN GRANTED THE STATE'S MOTION FOR SUMMARY JUDGMENT (§2953.21(D)) ON EACH SUBSTANTIVE GROUND ALLEGED ALL WITHOUT AN EVIDENTIARY HEARING.

{¶ 22} In this assignment of error, Hartman contends that the trial court erred by granting summary judgment on the following first ground for relief in his petition: Hartman was denied effective assistance of counsel when his trial counsel, Chris Conard, labored under a conflict of interest by representing both Gordon (the person who supplied alcohol at the party where the criminal conduct occurred) and Hartman.   Specifically, Hartman contends that the following evidence establishes that summary judgment should have been denied and an evidentiary hearing granted with regard to his claim of ineffective assistance of counsel based on an actual conflict of interest:   (1) Hartman told his trial counsel that the trash from the night of the rape was in Gordon's car; (2) trial counsel did nothing to secure or preserve this evidence; (3) trial counsel failed to ask Gordon at trial about the trash or wine bottles; and (4) trial counsel consulted with Gordon

through emails.

{¶ 23} The trial court rejected Hartman's contentions, finding (Dkt. 42, p. 11-12):

Mr. Hartman's only contention that suggests an actual conflict of interest is the assertion that Mr. Conard, through Mark Hartman, knew that Gordon [ ] retained the trash from the [R.] home, that included within the trash were the empty wine bottles consumed by [Courtney] and [M.W.], and that Mr. Conard, despite this knowledge, took no action to preserve the wine bottles. Mr. Hartman suggests that Mr. Conard did not take such action because "[T]he exposure to criminal liability of Gordon [ ], trumped preserving evidence for his client Mark Hartman."

Mr. Hartman's contention is belied by his statement (Trial Ex. 24) given to Detective Norris on January 2, 2014. Mr. Conard directed Mr. Hartman to write the statement, he reviewed and revised the statement, and he directed Mr. Hartman to provide the statement to Detective Norris. The statement sets forth in some detail the alcohol consumption Marcus [ ], Gordon [ ], and he engaged in, and, further, mentions the wine consumed by [M.W.] and Courtney [ ]. Mr. Conard's knowledge and allowance of the underage drinking details contained in Mr. Hartman's statement is completely inconsistent with Mr. Conard's suggested mission to protect [Gordon] from criminal exposure regarding underage drinking.

Mr. Hartman's petition and his response to the State's summary judgment motion is devoid of any evidentiary support for the contention that Mr. Conard failed to act to preserve the wine bottles in an effort to protect

Gordon [ ] from potential criminal charges. The petition states that on December 31 Mr. Hartman informed Mr. Conard that Gordon [ ] possessed the trash generated by the party at the [R.] home, and that Mr. Conard met with Gordon [ ] on December 31. These assertions are not supported by affidavit evidence or otherwise making Mr. Hartman's core actual conflict assertion unsupported allegations inconsistent with Mr. Hartman's "initial burden to submit evidentiary material containing operative facts sufficient to demonstrate substantive grounds for relief which merit a hearing." * * *

It is concluded that Mr. Hartman has failed to raise a factual issue that Mr. Conard did not act to preserve the wine bottles based upon a decision to place his loyalty to Gordon [ ] ahead of his duty to Mark Hartman. It is simply not plausible, given Mr. Hartman's statement given to Detective Norris on January 2, that this is the case.

**{¶ 24}** In support of his first ground for relief in his petition, Hartman primarily relied on emails that were attached to the Affidavit of K.L., the father of Gordon. We agree with the trial court that these emails are insufficient to establish any actual conflict with counsel's representation of Hartman and do not set forth sufficient operative facts to establish substantive grounds for relief. As the trial court points out, any alleged intent by trial counsel to protect Gordon to the detriment of Hartman is belied by the statement that counsel helped Hartman draft and then present to the detective.

**{¶ 25}** Hartman also contends that the trial court erred by considering the affidavit of Detective Norris, which was attached to the State's reply memorandum in support of its motion for summary judgment, because the affidavit "is not apparent on the face of the

record" as required by R.C. 2953.21(D). While the trial court noted the Norris affidavit in its discussion of Hartman's first ground for relief, the trial court did not rely on it in granting summary judgment on this ground for relief. Rather, the trial court relied on the fact that Hartman's statement to police, which was authored in conjunction with counsel, made it very clear that alcohol was provided at the house where Gordon was housesitting, which contradicts Hartman's theory that his counsel was not zealously representing Hartman in order to protect Gordon from potential criminal liability resulting from providing alcohol at the party. Finally, the trial court was permitted to consider K.L.'s affidavit, along with the attached emails, under the court's summary dismissal analysis pursuant to R.C. 2953.21(C). Therefore, Hartman has failed to demonstrate prejudicial error.

{¶ 26} We conclude that the trial court properly dismissed the first claim for relief in Hartman's petition for post-conviction relief without a hearing. The third assignment of error is overruled.

### V. The Trial Court Properly Dismissed The Second Ground For Relief In Hartman's Petition

{¶ 27} Hartman's Fourth Assignment of Error states:

THE COURT ERRED IN FINDING THERE WERE NO GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER THE ATTORNEY CLIENT PRIVILEGE WAS VIOLATED AND WHETHER THE VIOLATION CAUSED PREJUDICE TO HARTMAN WHEN TRIAL COUNSEL INCLUDED HARTMAN'S FAMILY IN PRIVILEGED MEETINGS AND SHARED PRIVILEGED MATERIALS WITH THEM.

{¶ 28} In this assignment of error, Hartman contends that the trial court erred in granting summary judgment on the following second ground for relief in his petition: Hartman was denied the effective assistance of counsel when counsel failed to maintain the attorney client privilege and instead included Hartman's family members in almost every meeting about Hartman's case. According to Hartman, his counsel rendered ineffective assistance by creating "tension between Hartman's Fifth Amendment right to remain silent and not to disclose confidential information in the presence of third persons absent informed consent, and his Sixth Amendment right to freely disclose all matters to his attorney * * * ." Hartman Appellate Brief, p. 29. This alleged tension was created by the fact that meetings with his counsel often took place with family members present, which ultimately may have led Hartman to withhold key facts in his statement to the police, which then led to a credibility issue with the trier of fact. According to Hartman, had he "fully disclosed and described the use of marijuana, the French kissing, and the digital penetration in his written statement, his credibility would have been judged differently, because the prejudice of his failure to include those facts, elicited on cross-examination by the State, would have been eliminated." *Id.* at 30.

{¶ 29} The trial court rejected Hartman's contention, stating (Dkt. 42, p. 12-13):

Mr. Hartman's contention, assuming its accuracy, is insufficient to create a factual issue requiring an evidentiary hearing. The confidentiality of the attorney-client relationship is of extreme importance, and any violation of its strictures is concerning. Mr. Hartman, this being said, has not, in either his petition or in the response to the summary judgment motion, articulated how the asserted conduct in probability altered the

outcome of the litigation.

* * * Such conclusory language is not sufficient to meet Mr. Hartman's initial burden "to submit evidentiary material containing operative facts sufficient to demonstrate substantive grounds that merit a hearing.["]

{¶ 30} In order to succeed on an ineffective assistance claim, Hartman must show that his trial counsel rendered deficient performance and that counsel's deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish deficient performance, Hartman must prove that his trial counsel's performance fell below an objective standard of reasonable representation. *Id.* at 688; *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989). In evaluating counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances the challenged action 'might be considered sound trial strategy.' " *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955).

{¶ 31} To show prejudice, Hartman must establish that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 204, citing *Strickland* at 687-688, 694; *Bradley* at paragraph two of the syllabus. The failure to make a showing of either deficient performance or prejudice defeats a claim of ineffective assistance of counsel. *Strickland* at 697.

{¶ 32} Hartman's contentions in this assignment of error are very speculative and conclusory. In essence, Hartman is contending that he *may* have withheld key facts from

his trial counsel because he *may* have been uncomfortable stating these facts in front of his family members who were present when Hartman met with his trial counsel. And these allegedly withheld facts, if they instead had been shared with trial counsel, *may* have led to a different credibility determination by the trial judge and to a different verdict. The only evidence provided in support of these contentions by Hartman are affidavits of family members stating that they were present when Hartman met with his trial counsel. Noticeably missing in these affidavits of family members are any statements based on personal knowledge that Hartman intentionally withheld key facts due to some sort of hesitancy caused by the presence of his family. Indeed, there is no statement at all in Hartman's affidavit that he intentionally withheld facts or did so because of the presence of his family. And there is no statement by Hartman that he did not voluntarily consent to having his family in his meetings with his trial counsel or that he told his counsel that he did not want his family present during discussions with his counsel. Finally, we note that Hartman's mother, in paragraph nine of her affidavit, stated that Hartman and his trial counsel spoke on the phone alone for a few minutes outside the presence of family members. There is no record of what was or was not discussed during that telephone call.

{¶ 33} We conclude that Hartman has failed to show either that his trial counsel provided ineffective assistance by allowing family members to be involved in his discussions with Hartman or that there is a reasonable probability that, but for the presence of family members in these discussions, the outcome of the trial would have been different. Consequently, the trial court properly dismissed the second ground for relief in Hartman's petition. The fourth assignment of error is overruled.

## VI. The Trial Court Properly Dismissed The Third Ground For Relief In Hartman's Petition

{¶ 34} Hartman's Fifth Assignment of Error states:

THE COURT ERRED IN FINDING THAT THERE WERE NO GENUINE ISSUES OF MATERIAL FACT ON THE QUESTION OF WHETHER TRIAL COUNSEL WERE INEFFECTIVE BY DELIVERING HARTMAN'S CONCOCTED STATEMENT TO THE LEAD DETECTIVE, ABSENT A KNOWING AND INTELLIGENT WAIVER OF THE ATTORNEY CLIENT PRIVILEGE, THE ATTORNEY WORK PRODUCT PRIVILEGE, OR THE FIFTH AMENDMENT RIGHT TO REMAIN SILENT.

{¶ 35} In this assignment of error, Hartman contends that the trial court erred in granting summary judgment on the following third ground for relief in his petition: Hartman received ineffective assistance of counsel when counsel delivered Hartman's statement to the lead detective, absent a knowing and intelligent waiver of the attorney client privilege and/or the attorney work product privilege when the statement was concocted by counsel.

{¶ 36} The trial court rejected Hartman's third ground for post-conviction relief, finding, in part (Dkt. 42, p. 13-15):

Mark Hartman, as to this third ground for post-conviction relief, asserts, in summary, that Mr. Hartman's statement contained, at Mr. Conard's instruction, language from a previous statement Mr. Conard used when representing another client, and that providing Mr. Hartman's

statement to Detective Norris before Mr. Conard had determined whether the physical evidence aligned with Mr. Hartman's version of events and what other witnesses may have told Detective Norris constituted an objectively deficient defense strategy. The contention regarding providing Mr. Hartman's statement to Detective Norris before Mr. Conard knew how the evidence aligned is barred by res judicata. This issue was raised on appeal with the appellate court * * * .

This determination, as indicated, precludes further consideration of Mr. Conard's decision to provide Mark Hartman's statement to Detective Norris.

Res judicata, however, does not eliminate the issue regarding Mr. Conard instructing Mr. Hartman to insert into his statement language from a statement apparently used by another similarly situated client represented by Mr. Conard.

***

Though the incorporation of another client's statement into Mr. Hartman's statement may be questioned, Mr. Hartman signed his name to the statement indicating he concurred in the sentiment being expressed. Further, the language, though stilted, is not inconsistent with Mr. Hartman's assertion the sexual activity was consensual. This court, given the highly deferential standard used to evaluate an attorney's performance cannot conclude Mr. Conard engaged in ineffective assistance of counsel by having Mr. Hartman incorporate the language at issue into his statement.

Additionally, and importantly, Mr. Hartman has failed to demonstrate that the exclusion of the contested language would have, within a reasonable probability, changed the outcome of the case.

{¶ 37} According to Hartman, the trial court failed to address the absence of a knowing and intelligent waiver of his right to remain silent. Hartman also contends that res judicata does not bar this ground for relief because his third ground for relief depended on evidence outside the record on the direct appeal, namely, Exhibits F, G, I, and J to his affidavit. Finally, Hartman points out that the trial court relied on evidence outside the record when it stated "this writer can state the language at issue did not affect the assessment of Mr. Hartman's credibility." Dkt. 42, p. 15.

{¶ 38} While the trial court judge's statement that the language did not affect his assessment of Hartman's credibility is technically evidence outside the face of the record that should not have been considered in ruling upon the motion for summary judgment, this statement was not necessary to the trial court's grant of summary judgment. In his direct appeal, Hartman did raise ineffective assistance of counsel based on the delivery of the statement to the lead detective. In overruling his assignment of error, we held that "It was reasonable, in light of counsel's perspective at the time, to pursue a strategy not to let the victim's version of events go unanswered in the investigative stage. We conclude that counsel's strategy of cooperation with the police investigation, under the circumstances of this case, did not constitute ineffective assistance of counsel." *Hartman*, 2016-Ohio-2883, ¶ 46.

{¶ 39} In *State v. Goldwire*, 2d Dist. Montgomery No. 20838, 2005-Ohio-5784, ¶ 11, we addressed the role res judicata plays in the analysis of petitions for post-conviction

relief:

>"The most significant restriction on Ohio's statutory procedure for post-conviction relief is that the doctrine of res judicata requires that the claim presented in support of the petition represent error supported by evidence outside the record generated by the direct criminal proceedings." *State v. Monroe*, Franklin App. No. 04AP-658, 2005-Ohio-5242. "Under the doctrine of res judicata, a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in that judgment of conviction or on an appeal from that judgment." *State v. Perry* (1967), 10 Ohio St.2d 175, 180, 226 N.E.2d 104. "Our statutes do not contemplate relitigation of those claims in post conviction proceedings where there are no allegations to show that they could not have been fully adjudicated by the judgment of conviction and an appeal therefrom." *Id.* "To overcome the res judicata bar, the petitioner must produce new evidence that renders the judgment void or voidable, and show that he could not have appealed the claim based upon information contained in the original record." *State v. Aldridge* (1997), 120 Ohio App.3d 122, 151, 697 N.E.2d 228. " 'Res judicata also implicitly bars a petitioner from "repackaging" evidence or issues which either were, or could have been, raised in the context of the petitioner's trial or direct appeal.['] " *Monroe.*

{¶ 40} We agree with the trial court that much of what Hartman raises in his third ground for relief is barred by res judicata, because these arguments were raised or could have been raised in his direct appeal. *Goldwire* at ¶ 11. Further, there is no evidence that Hartman did not agree with his counsel's advice or that he did not knowingly waive his rights. Rather, the evidence submitted by Hartman in his petition supports a finding that Hartman and his counsel discussed writing a statement and Hartman then wrote a statement that both he and his counsel revised before it was presented to the lead detective. We agree with the trial court that the emails between Hartman and his trial counsel, which were attached to Hartman's petition for post-conviction relief, are insufficient to create a genuine issue of material fact that Hartman's counsel committed professional errors or that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. R.C. 2953.21(D). Moreover, these emails are insufficient to warrant an evidentiary hearing. R.C. 2953.21(C).

{¶ 41} We conclude that the trial court properly dismissed the third ground for relief in Hartman's petition. The fifth assignment of error is overruled.

VII. The Trial Court Properly Dismissed The Fourth Ground For Relief In Hartman's Petition

{¶ 42} Hartman's Sixth Assignment of Error states:

THE COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT ON HARTMAN'S FOURTH GROUND FOR RELIEF THAT TRIAL COUNSEL WAS INEFFECTIVE BY FAILING TO SECURE

HARTMAN'S TAPE RECORDED STATEMENTS PRIOR TO TRIAL OR UPON FINDING THAT THEY DID NOT EXIST BY NOT WITHDRAWING AS COUNSEL TO BECOME A WITNESS AS TO THE CONTENTS OF HARTMAN'S STATEMENTS.

**{¶ 43}** In this assignment of error, Hartman contends that the trial court erred in granting summary judgment on the following fourth ground of relief in his petition: Hartman was denied the effective assistance of counsel (1) when counsel failed to secure Hartman's tape recorded statements made to Detective Norris prior to trial and (2) when counsel failed to withdraw as counsel to become a witness as to the contents of Hartman's prior statements when it was discovered that there were no tape recorded prior statements.

**{¶ 44}** The trial court rejected this ground for relief, finding (Dkt. 42, p. 15-17):

This issue was discussed in the Court's March 6, 2015 decision overruling Mark Hartman's motion for a new trial with the discussion occurring within the context of Mr. Hartman's contention that the State committed a *Brady* violation by its failure to produce Mark Hartman's recorded interviews with Detective Norris. * * * It, quite obviously, cannot reasonably be concluded that not obtaining statements which were not recorded constituted ineffective assistance of counsel or had any effect upon the trial's outcome.

* * * Mr. Hartman next asserts, it seems, that Mr. Conard should have ascertained before trial that the recordings did not exist, and, in anticipation of the need for him to be a witness regarding the content of the

interviews, withdrawn as counsel. Mr. Hartman, from this, concludes that if Mr. Conard had been available as a witness he could have rebutted the notion that Mr. Hartman mentioned digital penetration for the first time during his trial testimony.

It is initially noted there is no evidentiary support for Mr. Hartman's assertion that he informed Detective Norris that digital penetration occurred. This constitutes a failure regarding Mr. Hartman's burden to submit evidentiary material setting forth facts demonstrating grounds for relief that require a hearing. Further, and more importantly, Mr. Amos' comment was made during the rebuttal closing argument, the comment, as such, was not evidence and had no effect upon this court's verdicts. The court assessed the credibility of Mr. Hartman and [M.W.] – the participants in the events at issue – and based upon this testimony and the remaining trial evidence, came to the verdicts which were rendered. The fact that Mr. Amos mentioned Mr. Hartman's failure to include reference to digital penetration in his statement simply was not a factor in the verdicts which were reached.

{¶ 45} It appears undisputed that no recordings exist from the interview with Detective Norris. Thus, there cannot be a supportable claim that trial counsel was ineffective for failing to secure something that did not exist. Further, in his motion for a new trial, Hartman raised this issue of the recordings as part of a potential *Brady* violation by the State. Indeed, the primary evidence Hartman cites in his petition in support of his fourth ground for relief are citations to the transcript from the hearing on his motion for a new trial and letters from his trial counsel that were either presented with his motion for a

new trial or reference contentions that were made in his motion for a new trial. In short, Hartman could have raised this particular ineffective assistance of counsel claim in his direct appeal from his conviction and sentence. Therefore, this ground for relief is barred by res judicata. *Goldwire* at ¶ 11.

{¶ 46} We conclude that the trial court properly dismissed the fourth ground for relief in Hartman's petition. The sixth assignment of error is overruled.

VIII. The Trial Court Properly Dismissed The Fifth Ground For Relief In Hartman's Petition

{¶ 47} Hartman's Seventh Assignment of Error states:

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT ON HARTMAN'S FIFTH GROUND FOR RELIEF THAT ADVISING HARTMAN TO TAKE POLYGRAPH EXAMS WAS INEFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 48} In this assignment of error, Hartman contends that the trial court erred by granting summary judgment on the following fifth ground for relief in his petition: Hartman was denied effective assistance of counsel based on counsel's repeated advice to Hartman to take a polygraph despite the absence of any agreement with the State that the polygraphs would be admissible. According to Hartman, he was prejudiced by counsel's ineffectiveness when he made additional inculpatory statements to law enforcement and when the trial court was made aware that Hartman did not pass all of his polygraph tests.

{¶ 49} The trial court granted summary judgment on this ground for relief, finding

(Dkt. 42, p. 17-18):

Mark Hartman, in this ground for relief, asserts that allowing him to take two polygraph examinations conducted by Centerville Officer Nadine Dexter amounted to prejudicial ineffective assistance. It cannot be concluded, given the deferential standard when reviewing an ineffective assistance of counsel claim, that allowing the two polygraph examinations constituted ineffective assistance. Mark Hartman passed a polygraph examination arranged by Mr. Conard and conducted by Richard Emmons. This report was presented to Detective Norris who requested that Officer Dexter conduct a second examination. Officer Dexter evidently determined this examination demonstrated deception. Mr. Hartman, again evidently, was extremely nervous and emotional during this examination resulting in another examination conducted by Officer Dexter, with Officer Dexter concluding, again evidently, that Mr. Hartman was being deceptive.

The polygraph test results were, of course, not admitted at trial. It cannot be concluded that having Mr. Hartman take the Officer Dexter examinations constituted ineffective assistance. If the Dexter polygraph results had been favorable to Mr. Hartman, this could have resulted in the investigation terminating before the case was presented to the grand jury. This was the "upside" to the strategy with, since admission of the results into evidence was not possible, there being no "downside" to the polygraph examinations. The employed polygraph strategy, under these circumstances, simply did not constitute ineffective assistance.

{¶ 50} The parties appear to agree that the polygraph evidence was not formally submitted to the trial court or admitted into evidence. Apparently, the existence of polygraph tests was brought up during a pretrial conference with the court. The parties blame each other for the polygraphs coming up at all during that conference. In its decision denying the petition for post-conviction relief, the trial court stated that it did not recall any polygraph results being before it when it found Hartman guilty.

{¶ 51} As the trial court found, the decision to allow his client to take polygraph examinations without an agreement in place to admit these results into evidence is a trial strategy that does not establish ineffective assistance of counsel. *See State v. Clark*, 6th Dist. Lucas No. L-15-1160, 2016-Ohio-5173, ¶ 16. Reviewing courts do not second guess trial counsel's tactics or related strategic decisions. *State v. Hubbard*, 150 Ohio App.3d 623, 2002-Ohio-6904, 782 N.E.2d 674, ¶ 37 (7th Dist.), citing *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995). Moreover, the decision whether to submit to a polygraph test rested with Hartman. *Clark* at ¶ 16. "When a defendant agrees to undergo a polygraph test, presumably he knows whether he is telling the truth and is willing to assume the risk of error." *State v. Lascola*, 61 Ohio App.3d 228, 234, 572 N.E.2d 717 (10th Dist.1988).

{¶ 52} Further, these results were not admitted into evidence and we presume, unless shown otherwise, that the trial court did not rely on them in making its decision. We acknowledge that the statement by the trial court judge that he does not recall any discussion about polygraphs arguably is evidence outside the record that should not have been considered by the trial court. But that statement by the trial court was not necessary to resolution of the motion for summary judgment on this issue or to grant

summary dismissal without a hearing. Finally, Hartman has failed to show that that there is a reasonable probability that the result of the trial would have been different if Hartman's trial counsel did not let him take polygraph examinations.

{¶ 53} We conclude that the trial court properly dismissed the fifth ground for relief in Hartman's petition. The seventh assignment of error is overruled.

## IX. The Trial Court Properly Dismissed The Sixth Ground For Relief In Hartman's Petition

{¶ 54} Hartman's Eighth Assignment of Error states:

THE COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT ON HARTMAN'S SIXTH GROUND FOR RELIEF ALLEGING HE WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN A DIAGRAM OF THE COMFORTER STAINS WAS PRODUCED FOR THE FIRST TIME AT TRIAL.

{¶ 55} In this assignment of error, Hartman contends that the trial court erred by granting summary judgment on the following sixth ground for relief in his petition: Hartman was denied effective assistance of counsel when a diagram of the comforter stains found in the lab technician's notes was produced for the first time at trial and his counsel did not take sufficient affirmative steps regarding that late production.

{¶ 56} The trial court rejected Hartman's contention on the basis of res judicata, stating (Dkt. 42, p. 19):

It is initially concluded that this ineffective assistance claim is barred by res judicata. As noted, the res judicata doctrine bars a petitioner from

asserting a post-conviction ground for relief which was, or could have been, raised on direct appeal. * * * The issue of the diagram, and Mr. Conard's reaction to it, is a part of the trial record. Mr. Hartman could have raised this ineffective assistance claim on direct appeal with this failure triggering the application of the res judicata bar as to this claim.

Further, the trial court found that even if Hartman's contention was not barred by res judicata, this particular ground for relief would be denied because "Mr. Hartman has provided no evidentiary support that the suggested stain analysis would have, within a reasonable probability, made the trial's outcome different." *Id.* at 20.

**{¶ 57}** In support of this ground for relief, Hartman only cited evidence that was submitted to the trial court in support of Hartman's motion for a new trial. The motion for a new trial, along with the affidavit in support of the motion, were part of the record in Hartman's direct appeal from his conviction and sentence. Hartman could have raised this same argument with the same evidence in his direct appeal from his conviction and sentence. Therefore, we agree with the trial court that Hartman's claim in his sixth ground for relief is barred by res judicata. *Goldwire* at ¶ 11.

**{¶ 58}** We conclude that the trial court properly dismissed the sixth ground for relief in Hartman's petition. The eighth assignment of error is overruled.

X. The Trial Court Properly Dismissed The Eighth Ground For Relief In Hartman's Petition

**{¶ 59}** Hartman's Ninth Assignment of Error states:

THE COURT ERRED IN GRANTING SUMMARY JUDGMENT ON

HARTMAN'S EIGHTH GROUND FOR RELIEF ALLEGING THE STATE OF OHIO COMMITTED A *BRADY* VIOLATION.

**{¶ 60}** In this assignment of error, Hartman contends that the trial court erred in granting summary judgment on the following eighth ground for relief in his petition: the State committed a *Brady* violation by not providing any information through discovery regarding the test results that showed where on the comforter the Montgomery County Lab technician found stains containing DNA confirmed to be from Hartman and/or M.W.

**{¶ 61}** In granting summary judgment on this ground for relief, the trial court noted that the alleged violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), previously was raised in Hartman's motion for new trial, which the trial court overruled. Dkt. 42, p. 21. The trial court then found (*id.*):

> Since the *Brady* issue regarding the comforter diagram was argued and, following an evidentiary hearing, resolved by the trial court, this issue could have been presented on direct appeal. Accordingly, the res judicata doctrine bars consideration of this ground for relief.

> It is noted, however, that even if res judicata did not act as a bar to consideration and assuming the State suppressed the diagram, there would, nonetheless, be no basis to grant postconviction relief. This is so because, as discussed, the court, when reaching the verdicts, did consider the location of the stains on the comforter, and concluded, for the discussed reasons, that the location of the stains on the comforter did not affect [M.W.]'s credibility nor this court's acceptance of her version of the events at issue.

{¶ 62} This issue was one of three primary issues on which Hartman moved for a new trial.   On Hartman's direct appeal, he contended, in his second assignment of error, that the trial court erred in denying his motion for new trial, but he apparently did not address the alleged *Brady* violation regarding the diagram.   Moreover, in his petition, he does not cite any evidence in support of this *Brady* violation that was not available in his direct appeal.   Consequently, Hartman could have raised this claim in his direct appeal from his conviction and sentence and his failure to do so bars him from raising that same claim in a petition for post-conviction relief.   *Goldwire* at ¶ 11.

{¶ 63} We conclude that the trial court properly dismissed the eighth ground for relief in Hartman's petition.   The ninth assignment of error is overruled.

## XI. The Trial Court Properly Dismissed The Ninth Ground For Relief In Hartman's Petition

{¶ 64} Hartman's Tenth Assignment of Error states:

THE COURT ERRED IN GRANTING SUMMARY JUDGMENT ON HARTMAN'S NINTH GROUND FOR RELIEF ALLEGING INDIVIDUALLY AND CUMULATIVELY INEFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 65} In this assignment of error, Hartman contends that the trial court erred in granting summary judgment on his ninth ground for relief in his petition:   Hartman was denied the effective assistance of counsel due to counsel's failure to prepare properly for trial and failure to act zealously on his client's behalf.

{¶ 66} The trial court rejected this ground for relief by noting that this issue was raised and resolved against Hartman in his direct appeal from his conviction.   Dkt. 42, p.

22. The trial court cited to paragraphs 54-57 of our prior opinion and concluded "Mark Hartman's assertion regarding Mr. Conard's purported lack of adequate preparation is, based upon the appellate court's resolution of the issue, barred by the res judicata doctrine." *Id.* at 23. Hartman contends that the trial court erred in relying on res judicata to grant summary judgment on this ineffective assistance of counsel claim. According to Hartman, the affidavits attached to his petition for post-conviction relief identified at least fifteen "examples of the ineffectiveness of trial counsel, to which res judicata does not apply." Hartman Brief, p. 55.

{¶ 67} In his direct appeal from his conviction and sentence, Hartman raised ineffective assistance of counsel claims based on his counsel's failure to adequately investigate the case in the following ways: failing to interview the victim's friend, failing to interview the lab witness, failing to seek discovery of the notes of the forensic lab analyst, and failing to obtain the recordings from Hartman's police interviews. In the current appeal, however, Hartman raised the following examples of inadequate preparation: (1) counsel brought up conducting a mock trial and Hartman's family said they would pay for it but counsel never held a mock trial; (2) a private investigator was hired 42 days before trial and suggested further areas of investigation that were never pursued; (3) counsel never spoke with any witness before trial and the investigator only spoke with one; (4) counsel was confident that there would be no criminal charges and stated that he "could try the case tomorrow sitting on his hands" even though he had yet to hire an investigator; (5) Hartman's grandfather encouraged counsel to speak with the forensic analyst who performed the tests on the comforter but counsel did not; (6) counsel failed to impeach the lead detective with a false date and time that was contained in the

lead detective's report regarding the medical authorization sought from the victim; (7) Detective Norris failed to record that a third meeting occurred with the victim and the raw notes of the lead detective were not requested or produced; (8) Co-counsel Sasha VanDeGrift Blaine lacked preparation; (9) Co-counsel Blaine conducted harmful and prejudicial cross-examination of Courtney because of her late entry into the case and lack of preparation; (10) Hartman was never prepared for cross-examination; (11) Hartman's direct examination was conducted by Blaine, who entered the case three days before trial; (12) Blaine did not prepare Hartman for direct examination until after the first day of trial; (13) counsel did not discuss whether or not Hartman should testify on the second day after his story was read into the record on the first day by the detective, which would have saved him from cross-examination; (14) no testing was done on the sheets from the night in question despite the fact that Hartman allegedly ejaculated into the sheets; and (15) no testing of the sheets was done even though the lead detective's supplemental reports state that the victim said she wrapped a sheet around her and then exited the bathroom.

**{¶ 68}** The trial court relied solely on res judicata in granting summary judgment on this issue.  But res judicata does not appear to apply to all of the fifteen instances identified above, because these instances are based on affidavit evidence that was not available in the direct appeal.  Therefore, the trial court erred by relying solely on res judicata to dismiss the ninth ground for relief in Hartman's petition.  However, we conclude that the trial court's error was not prejudicial to Hartman because the fifteen examples of alleged inadequate preparation identified by Hartman do not establish ineffective assistance of counsel.

{¶ 69} Many of Hartman's examples of inadequate preparation involve potential actions that trial counsel considered but did not pursue or actions that he pursued but not to the extent that Hartman's family thought counsel should have pursued. For example, Hartman criticizes his trial counsel for not conducting a mock trial, not speaking to the forensic analyst prior to trial, not performing tests on the sheets that were present at the time of the criminal activity, not hiring a private investigator earlier than forty-two days before trial, not speaking to certain witnesses before trial, and not preparing Hartman for testimony earlier in the process. But " '[a]ttorneys need not pursue every conceivable avenue; they are entitled to be selective.' " *State v. Murphy*, 91 Ohio St.3d 516, 542, 747 N.E.2d 765 (2001), quoting *U.S. v. Davenport*, 986 F.2d 1047, 1049 (7th Cir.1983). "Even unsuccessful tactical or strategic decisions will not constitute ineffective assistance of counsel." *State v. Williams*, 2d Dist. Montgomery No. 24548, 2012-Ohio-4179, ¶ 28, citing *State v. Carter*, 72 Ohio St.3d 545, 558, 651 N.E.2d 965 (1995). Further, we must keep in mind that "[h]indsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel." (Citation omitted.) *State v. Hill*, 2d Dist. Greene No. 2004 CA 79, 2005-Ohio-3176, ¶ 13.

{¶ 70} Hartman also criticizes trial counsel for claiming that he was confident that no criminal charges would be brought against Hartman and for stating that he "could try the case tomorrow sitting on his hands." But these criticisms do not establish how the trial would have been different if counsel did not make these statements.

{¶ 71} Hartman further criticizes trial counsel for failing to effectively impeach the

lead detective, waiting too long to bring in a co-counsel, and choosing a co-counsel who lacked preparation and conducted a "harmful and prejudicial" cross-examination of a witness.  Hartman Appellate Brief, p. 53-54.  Hartman's criticisms of what trial counsel did or did not do during the examination of witnesses at trial could have been raised in his direct appeal from his conviction and sentence.   Indeed, Hartman did raise criticisms of his counsel's performance and preparation in his direct appeal.  We conclude that these claims are barred by res judicata as " 'repackag[ed]' evidence or issues which either were, or could have been, raised in the context of the petitioner's trial or direct appeal." *State v. Monroe*, 10th Dist. Franklin No. 04AP-658, 2005-Ohio-5242, ¶ 9, quoting *State v. Hessler*, 10th Dist. Franklin No. 01AP-1011, 2002-Ohio-3321, ¶ 27.

{¶ 72} We conclude that Hartman has failed to put forth sufficient operative facts to establish that his trial counsel provided ineffective assistance of counsel.   Therefore, the trial court properly dismissed the ninth ground for relief in Hartman's petition without a hearing.   The tenth assignment of error is overruled.

XII. The Trial Court Properly Dismissed The Tenth Ground For Relief In
Hartman's Petition

{¶ 73} Hartman's Eleventh Assignment of Error states:

THE COURT ERRED IN GRANTING SUMMARY JUDGMENT ON HARTMAN'S TENTH GROUND FOR RELIEF ALLEGING THAT HARTMAN WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE COUNSEL FAILED TO ACCURATELY ADVISE HARTMAN ON THE COSTS AND BENEFITS OF WAIVING A JURY TRIAL.

{¶ 74} In this assignment of error, Hartman contends that the trial court erred in granting summary judgment on his tenth ground for relief in his petition:   counsel failed to obtain informed consent to the waiver of a jury trial.

{¶ 75} The trial court summarized Hartman's contentions and rejected this ground for relief, finding (Dkt. 42, p. 23-25):

Mark Hartman, in this final ground in support of post-conviction, asserts, while acknowledging Mr. Hartman executed a jury waiver in open court following a discussion of this issue with the court, that the jury waiver was not made with informed consent.   Mr. Hartman asserts Mr. Conard recommended a jury waiver based upon his relationship with this judge, that this judge raised three sons and, thus, would understand Mr. Hartman's situation, that given the media coverage of campus sexual assaults he could not expect all twelve jurors to believe him, that in a bench trial the judge determines the facts with the facts not equating to a conclusion that a rape had occurred, and that it would be in Mr. Hartman's interests to have an educated judge as opposed to twelve uneducated jurors decide the case. Mr. Hartman takes issue with some of this advice, including a criticism that informing him that in the current media climate he could not expect twelve jurors to believe his version of events because this statement implied that he, not the State, had the burden of proof.   Mr. Hartman is also critical of what Mr. Hartman was not told including that on direct appeal review of asserted evidentiary errors would be severely limited and that if one juror concluded the State failed in its burden of proof this would prevent a guilty

verdict.

* * *

It is concluded, turning to the pending case, that Mr. Conard's preference for a bench trial was a matter of trial strategy. This decision, which is not subject to the distorting influence of hindsight, was, given the circumstances, a reasonable strategic decision.

Though it is unfortunate, if accurate, that Mr. Hartman was informed that [t]his writer raised sons as opposed to daughters, it cannot be concluded that this inaccurate information rendered the jury waiver recommendation ineffective assistance. Further, Mr. Conard's failure to apprise Mr. Hartman that appellate review of evidentiary issues is limited following a bench trial (a dubious assertion given the number of evidentiary issues raised on direct appeal) and that one juror could cause a "hung jury" and, thus, a mistrial did not make Mr. Conard's jury waiver advise ineffective assistance. Here, similar to *State v. Linehan*, [2d Dist. Montgomery No. 16841, 1998 WL 905347 (Sept. 4, 1998)], Mr. Hartman subjectly [sic] asserts his jury waiver was not an informed waiver but there is nothing in the record to demonstrate that the advise or the manner in which it was given was "objectively unreasonable." *Id.*

{¶ 76} Hartman contends that the trial court erred in finding that counsel's advice to waive a jury trial was not objectively unreasonable. According to Hartman, the following evidence shows that there is a genuine issue of material fact as to whether the advice was objectively unreasonable: (1) Counsel first informed the trial court at a bond

conference "that the family would probably be going with a bench trial"; (2) counsel told Hartman's family that he had a good relationship with the judge, which Hartman's grandfather interpreted as being strong enough for the judge to find reasonable doubt; (3) counsel informed Hartman that the trial court judge raised three sons when in fact he had raised three daughters; (4) counsel did not explain the benefits of the jury trial and that one juror could save the defendant; (5) on August 11, 2014, counsel stated to the family that he had not been provided with all the discovery and was going to write a letter; (6) counsel did not write the discovery letter until August 26, 2014, and (7) Hartman executed the jury trial waiver on August 20, 2014. Hartman Appellate Brief, p. 57-58.

{¶ 77} "Defense counsel's [advice] to a client to waive his right to a jury trial has been considered sound trial strategy in the absence of record evidence showing otherwise." *State v. Neitzel*, 2d Dist. Miami No. 98 CA 11, 1998 WL 735942, *6 (Oct. 23, 1998). Further, Hartman "has not suggested a single reason why the outcome of the trial would probably have been otherwise had he been tried by a jury rather than before a judge." *Id. See also State v. Aaron,* 10th Dist. Franklin No. 00AP-268, 2000 WL 1753151, *4 (Nov. 30, 2000) ("Without supporting evidence, the mere claim that a jury would have believed defendant falls far short of establishing a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.").

{¶ 78} We conclude that trial counsel's advice to Hartman to waive his right to a jury trial was a reasonable trial strategy that does not rise to the level of ineffective assistance of counsel and Hartman has failed to put forth sufficient operative facts to establish that there is a reasonable probability that the result of the trial would have been

different if it was tried to a jury rather than a judge. Therefore, the trial court properly dismissed the tenth ground for relief in Hartman's petition. The eleventh assignment of error is overruled.


## XIII. Conclusion

{¶ 79} All of Hartman's assignments of error having been overruled, the judgment of the trial court is affirmed.


. . . . . . . . . . . . .


HALL, P.J. and FROELICH, J., concur.


Copies mailed to:

Mathias H. Heck, Jr.
Andrew T. French
S. Adele Shank
Lawrence J. Greger
Montgomery County Common Pleas Court
c/o Hon. Mary Katherine Huffman, Administrative Judge